Argued April 1, reversed April 13, 1915.

# POTTER REALTY CO. *v.* DERBY.

### (147 Pac. 548.)

**Vendor and Purchaser—Covenants to Make Improvements—Operation and Effect.**

1. In a contract for the sale of a lot in a platted tract of land which the vendor was developing, containing an agreement by the vendor to make certain improvements in such tract and to work continuously on such improvements and expend not less than $100,000 each year until they were fully completed, the agreement to spend such sum each year was a concurrent covenant, and the vendor, while neglecting to comply therewith, could not recover unpaid installments of the purchase price.

**Vendor and Purchaser—Remedies of Vendor—Recovery of Purchase Price.**

2. An agreement, in a contract for the sale of a lot, for a price payable in installments, that on default in the payment of any installment all payments should be forfeited to the seller, and the contract should become "void as to both parties," and the vendor should have the right to enter upon the property and take possession thereof, together with improvements thereon, provided an exclusive remedy in case of default, and the vendor could not recover unpaid installments of the purchase price.

From Marion: PERCY R. KELLY, Judge.

Department 1.   Statement by MR. JUSTICE McBRIDE.

This is an action by the T. B. Potter Realty Company against F. N. Derby to recover certain installments claimed to be due upon a contract for the purchase and sale of certain real estate situated in Tillamook County, which contract is as follows:

"This agreement, made the 27th day of May, 1909, between T. B. Potter Realty Company, a corporation, the party of the first part, and F. N. Derby, the party of the second part, witnesseth: That in consideration of the stipulations herein contained, and the payments to be made as hereinafter specified, the first party hereby agrees to sell, and the second party agrees to purchase the following described real estate, situate in the county of Tillamook, State of Oregon, to wit:

Lot (10) ten in block (75) seventy-five of Bayocean Park, as the same is marked and described on the plat of said Bayocean Park, on file and of record in the office of the county clerk of the said Tillamook County, for the sum of $600, on account of which $10 is paid on the execution hereof, the receipt of which is hereby acknowledged, and the remainder, together with interest from date at the rate of 6 per cent per annum on all deferred payments, to be paid at the office of the T. B. Potter Realty Company, in Portland, Oregon, as follows: $10 or more on the 27th day of each and every month hereafter until the full amount of $600 has been paid. Said interest to be paid immediately upon the completion of the payment of the installments above mentioned. Any and all taxes which become collectible subsequent to January 1, 1910, to be paid by the party of the second part, and all taxes prior thereto by the party of the first part. Party of the second part agrees not to erect or permit to be erected on said lot any dwelling or store building to cost less than $500, and, further, agrees to cause any building or buildings erected by me on said lot to be well painted with at least two coats of paint. The above restrictions to remain in full force and effect for twenty years from July 1, 1908, and shall be binding upon the heirs of and all persons owning said lot under, by or through second party. The party of the first part agrees to have water-pipes laid either in front, or rear, or through each lot sold in Bayocean Park (said water-pipe to belong to the party of the first part); to grade and pave all streets in Bayocean Park, and to lay paved sidewalks on each side of same; to lay out and improve grounds to contain not less than six acres, and to erect on said grounds a first-class hotel and such other attractions as may be deemed most suitable and desirable by it; to install at least three docks or boat landings, on the bay side of Bayocean Park, and to operate a ferry-boat between Bay City or some other suitable railroad station, on the eastern side of Tillamook Bay and Bayocean. Said first party hereby agrees to work continuously on said improvements, and

to expend not less than $100,000 each year from January 1, 1909, until the same is fully completed. All improvements herein named to be made without expense to party of the second part. And the party of the first part agrees that when full payments shall have been received, it will cause to be executed and delivered, at its own cost and expense, to said second party, his heirs, executors, administrators, or assigns, a warranty deed, free from all encumbrances for the property aforesaid, subject, however, to the conditions and restrictions herein named, and also to furnish said party of the second part an abstract of title to said property. First party to reserve in said deed the right and privilege of laying and maintaining water, sewer and gas pipes and to erect and maintain telephone and electric light poles and wires on said land adjoining the rear line thereof, and the right of laying, constructing or erecting and maintaining the same, and all other useful improvements in any street in said Bayocean Park. The party of the second part shall have the privilege of exchanging the above-mentioned lot, at any time between April 1, 1909, and 60 days after the completion of a railroad between Portland and Tillamook Bay, for any unsold lot, offered for sale and belonging to the party of the first part in Bayocean Park of equal or greater value by paying the price of the lot so selected as per the map and price list hereto attached, and made a part of this agreement, in which event all money paid on this contract shall be applied on the lot so selected. The said second party, in consideration of the premises, hereby agrees that he will make punctual payments of the above sums as each of the same shall become due respectively, and that in respect to each of such payments time is of the essence of this contract. It is further agreed that in case that said party of the second part shall fail to make any such payment promptly at the time provided in this contract for such payment, or shall fail in the performance of any other agreement herein contained by him to be performed, or violate any other of the agreements

herein contained, then and in any such case, all payments which shall have been made by the party of the second part hereunder shall be absolutely and forever forfeited to the said party of the first part, and this contract shall be null and void as to both parties hereto without notice, and the said party of the first part shall have the right, without notice, thirty days after the failure of the party of the second part to comply with the stipulations of this contract, or any one of them, to enter upon the land aforesaid and take immediate possession thereof, together with the improvements and appurtenances thereto belonging. And the said party of the second part covenants and agrees that he will surrender unto said party of the first part the said land and appurtenances without delay or hindrance. Agents are not authorized to make representations concerning the land in question excepting those contained in this instrument.

"In witness whereof, the parties hereto have executed these presents in duplicate this day and year first above written.

"T. B. POTTER REALTY COMPANY.

"By T. B. POTTER.   ·[Seal]

"F. N. DERBY.     [Seal]"

The defendant answered, setting up the contract. upon which installments amounting to $300 had been paid, alleging the following state of facts:

"That said plaintiff has wholly failed to perform the said agreements and covenants on its part undertaken in said contract to be performed, in this: That the said plaintiff has sold to various different parties a large number of lots aggregating, as the defendant is informed and believes and alleges, about 2,000, a great number of which sold lots are in the immediate vicinity of the said lot sold to defendant; that plaintiff has failed and neglected to lay any water-pipes in the front, or the rear, or through said lot 10, block 75, or any part of said block, or any nearer thereto than about two blocks distant therefrom, and such water-

pipes that the plaintiff has caused to be laid in that part of Bayocean Park, where block 75 is situate, consists of ordinary black iron pipe laid on top of the sand, and is exposed to the elements, and is rapidly deteriorating, and because of the salt air is not a substantial or lasting improvement or compliance with plaintiff's contract; that the plaintiff has wholly failed to lay out, grade, or pave any streets in Bayocean Park in or about the said lot sold to the defendant, or to lay any paved sidewalks on either side of any street in or about the said lot, or any pavement or sidewalks in any part of the said Bayocean Park within one-half mile of the said lot; and said lot cannot now be approached excepting on foot by walking over sand dunes and marshes; that the plaintiff has failed to install or make three docks or boat landings on the east side of Bayocean Park, but has made one boat landing which is about one mile from said lot 10, and has failed to operate any ferry-boat between Bay City and any point or railroad station on the eastern side of Tillamook Bay or Bayocean Park, or at all; that the said plaintiff has failed and neglected to expend the sum of $100,000 in any year from January 1, 1909, until the present time, upon the improvements covenanted by it to be made in said Bayocean Park, and none of the said improvements have been completed, nor has the said plaintiff expended upon said improvements in the aggregate in the five years next following January 1, 1909, anything in excess of the sum of about $100,000, during the whole of said time, and what pavement it has attempted to make is of a grossly inferior and worthless character and amounts to a fraud upon defendant and purchasers of lots in said park. The defendant further alleges that long prior to June 2, 1911, the plaintiff has wholly failed and neglected to perform any of its covenants and agreements in said contract, had ceased making said improvements, and had become insolvent, and ever since has been and is now in an insolvent condition, and for the reason aforesaid the defendant ceased making payments on his said contract from and after June 2,

1911, when he made the last payment of $10 thereon, and, including said last payment, defendant had then paid in all on said purchase price the total sum of $300, and other purchasers of lots in said park generally have ceased making payments on their contracts to plaintiff. Said Bayocean Park is situated on a rough and narrow point of land and sand spit on the eastern shore or beach of the Pacific Ocean, and on the western shore of Tillamook Bay, in Tillamook County, Oregon, and between said bay and said ocean, and south of the confluence of the waters of the bay and ocean. In its natural state said point of land had no value whatever, and could not be reached by any public conveyance regularly operated, but only by private boats or boats specially hired as occasion might require to cross said bay from the eastern or northern shores thereof to said narrow point of land; and the plaintiff, by making the improvements thereon and operating the said ferry-boat agreed by it to be made and operated in its said contract with defendant, which agreement is the same made by plaintiff with all other purchasers of lots in said park, was to convert the said narrow point of land into a condition suitable and valuable for a summer resort, and the several lots therein accessible, convenient and suitable for building thereon summer residences by the respective purchasers thereof; that the said lot, at the time defendant agreed as aforesaid to purchase it, was of no value, and never will be accessible so as to be improved or used or of any value until plaintiff makes all the said improvements, and particularly the said improvements to and in the vicinity of said lot agreed by it to be made, and by reason of plaintiff's failure to make said improvements as agreed by it to be made, defendant has been prevented from making any improvement on said lot, or any use thereof, or of approaching said lot except on foot over more than one-half mile of sand-hills."

A further and separate defense similar to the foregoing was also pleaded, which further alleged the in-

solvency of the plaintiff. The plaintiff filed a reply containing the following admissions:

"Plaintiff admits that it has sold various parties a large number of lots in Bayocean Park, aggregating approximately 2,000 lots, to wit, 1,658 lots, many of which are in the immediate vicinity of said lot 10, block 75, and admits plaintiff has not yet laid any water-pipes in front, or rear, or through said lot, or any nearer thereto than about two blocks distant therefrom, and that the water-pipe which plaintiff has laid in that part of Bayocean Park where block 75 is situate consists of an iron pipe laid on top of the ground and exposed, and that said pipe is not a lasting improvement, but is only a temporary expedient; and plaintiff admits that plaintiff has not yet graded or paved any streets in Bayocean Park in or about the said lot sold to the defendant, or laid any paved sidewalks on either side of any street in or about the said lot or any pavement or sidewalks in any part of Bayocean Park within one-half mile of said lot, and that the said lot cannot now be approached except on foot; and plaintiff admits that it has not yet installed more than one dock or boat landing on the east side of said Bayocean Park, and that said boat landing is about one mile from said lot 10, and admits that the defendant ceased making payment on said contract from and after June 2, 1911, and admits that defendant has paid $300 on the purchase price of the said lot. * * Plaintiff admits that Bayocean Park is situated on a narrow point of land between Tillamook Bay and the Pacific Ocean, and south of the confluence of the waters of the bay and the ocean, and that there was no public conveyance regularly operated to Bayocean Park in its natural state, and that plaintiff proposed and intended, and still proposes and intends, by making the improvements thereon and operating the ferry-boat agreed by it to be made and operated in its contract with the said defendant, to convert the said Bayocean Park into a condition suitable and valuable for a summer resort and make the several lots therein accessible, convenient, and

suitable for building thereon summer residences by the respective purchasers thereof.''

All other matters were denied. The reply also contained the following affirmative allegations:

''That at all times since it entered into the contract with the defendant, alleged and mentioned in the complaint in defendant's answer, plaintiff has proceeded diligently and in good faith, and that it is now proceeding diligently and in good faith, to make and complete all of the improvements in and upon Bayocean Park and upon said lot 10, block 75, which are provided for in said agreement between the plaintiff and defendant, and that plaintiff has made and completed, in all respects in accordance with the provisions of the said contract, a very large, and substantial part of the said improvements, and has worked continuously on the said improvements and has expended thereon a sum in excess of $500,000, and that plaintiff is now working, and proposes to continue working continuously, upon the said improvements until the same are fully made and completed in all respects in accordance with the terms and conditions of the said contract and all other contracts which plaintiff has issued to purchasers of lots in Bayocean Park; that said Bayocean Park is at a considerable distance from any important industrial center, and the labor and materials to be employed and used in and about said improvements have been increased by said conditions, and the progress of the work has been slower by reason of said difficulties than it would otherwise have been, and that the said improvements involve, among other things, the doing of a very large amount of grading, and the laying of a great many miles of paved streets necessarily requires a long time for its proper and economical performance, but that plaintiff is ready and willing and able to proceed, and intends to and will proceed continuously with the said work of improvement and expend not less than $100,000 per year thereon each year until all of the said improvements are completed, and intends, and is able

to, and will make and complete all of the said improvements provided for in its contract with defendant, and in all other contracts which it has given for lots in Bayocean Park, in conformity with all of the provisions of the said contracts; that plaintiff has adopted the policy of paving streets and laying water-pipes and making other improvements at such places and in such order as will best accommodate persons who have built, or intend in the near future to build, houses in Bayocean Park, in so far as such policy can reasonably be pursued in view of the practical requirements of an orderly development of the said improvements, and that defendant has not built, and does not intend to build in the near future, any house upon the said lot 10, block 75.''

Plaintiff moved for judgment on the pleadings, when being allowed, defendant appeals.

REVERSED, WITH DIRECTIONS TO DISMISS ACTION.

For appellant there was a brief and an oral argument by *Mr. Frank Holmes.*

For respondent there was a brief over the names of *Messrs. Veazie, McCourt & Veazie,* and *Mr. Frank A. Turner,* with an oral argument by *Mr. J. C. Veazie.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The agreement of plaintiff to spend $100,000 a year is a concurrent covenant, and was, no doubt, a large part of the consideration which induced defendant to enter into the agreement. Plaintiff cannot neglect to comply with this portion of its agreement and recover installments which are unpaid at the time the breach occurred.

2. The parties having agreed upon their own remedy for a breach of the contract, that remedy is exclusive.

They have so agreed here by stipulating that in the event of default in payment of any installment of the purchase price all payments theretofore made shall be forfeited to the seller and the contract shall become void as to both parties without notice, and that 30 days after such default the seller shall have the right to enter upon the property and take possession thereof. together with the improvements. We find no reason for construing this contract to mean anything different from what its language implies. On default in the payments the purchaser loses what he has already paid, and the agreement becomes "void as to both parties." It would be juggling with words to say that this language should be construed to mean "void at the option of the seller," or "void at the option of one party." None of the cases cited by the learned counsel for respondent involve the construction of an agreement containing the language used in the contract here pleaded. In *Maffet* v. *Oregon & Cal. R. Co.,* 46 Or. 443 (80 Pac. 489), the forfeiture clause was as follows:

"And it is hereby agreed and covenanted by the parties hereto that the times of the payments are of the essence of this contract. And in case the second party shall fail to make the payments aforesaid, and each of them, punctually and upon the strict terms and times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid strictly and literally, without any failure or default, then this contract, so far as it may bind the first party, shall become utterly null and void, and all rights and interests hereby created or then existing in favor of the second party, or derived from them, shall utterly cease and determine, and the right of possession and all legal and equitable interests in the premises hereby contracted shall revert to and revest in said first party, without any declaration of forfeiture or act of re-entry; or any other act by said first party to be performed, and without any right of said second party of reclama-

tion or compensation for moneys paid or services per-formed, as absolutely, fully and perfectly as if this contract had never been made.''

In *Morris* v. *Green,* 62 App. Div. 460 (70 N. Y. Supp. 1096), the forfeiture clause read:

"And the party of the second part hereby expressly agrees with the party of the first part that should any default be made in the payment of the said installments, or any one of them, on any day whereon the same may become due, then, and from thenceforth, after the lapse of thirty days from the time of such default, each and every previous installment paid by the party of the second part without any notice to the said party of second part, notice, tender and demand being hereby waived, become and be forfeited by the party of the second part to the party of the first part as fixed and liquidated damages, and be irrecoverable and beyond demand by the party of the second part, and this agreement shall determine and be of no further effect or virtue.''

These fairly represent the class of cases in which forfeiture clauses have been held to be solely for the benefit of the seller. In none of them is it stipulated, as here, that default shall render the agreement void as to both parties. In the case at bar, where the whole agreement seems to have been drawn advantageously to the seller, it is not unreasonable to assume that the purchaser intended to reserve to himself the one small privilege of losing what money he might at any time have paid, and thereby be automatically released from further obligation.

The judgment is reversed and the cause remanded to the Circuit Court, with directions to dismiss the action.

REVERSED, WITH DIRECTIONS TO DISMISS.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.