Argued October 1, affirmed November 12, 1918.

# KEMMERER *v.* TITLE & TRUST CO.

### (175 Pac. 865.)

**Frauds, Statute of—Land Contract—Part Performance.**

1. Payment by purchaser of $140 on land contract, where purchase price was $750, was sufficient part performance to entitle purchaser to specific performance, though contract did not comply with statute of frauds.

> [As to enforcement of contracts because of part performance, see note in 32 Am. Dec. 129.]

**Vendor and Purchaser — Mutual Rescission — Recovery of Purchase Price.**

2. Where contract for sale of land is mutually rescinded, purchaser is entitled to recover purchase price paid.

**Vendor and Purchaser—Forfeiture of Payments.**

3. Forfeiture provision in land contract may be self-executing, or may merely confer option upon vendor, in which latter event default does not of itself work a forfeiture, and vendor is entitled thereto only after a declaration of forfeiture or some equivalent act or conduct.

**Vendor and Purchaser—Forfeiture of Payments.**

4. A provision in land contract for forfeiture of payments will not be construed self-executing, unless unequivocal language is used showing plainly and clearly that such was the intention of the parties.

**Vendor and Purchaser—Forfeiture of Payments.**

5. Stipulation in land contract that, upon purchaser's noncompliance, "deposit shall be forfeited as liquidated damages," is not a self-executing forfeiture clause.

**Vendor and Purchaser—Time of Payments—Waiver by Vendor.**

6. Where installment land contract provided for forfeiture of payments upon purchaser's noncompliance with contract, vendor, after waiving strict compliance with terms as to time of payment, could not claim forfeiture for default in payment without notifying purchaser of its intention to claim a forfeiture unless he made payment within reasonable time.

**Vendor and Purchaser—Abandonment of Contract.**

7. Under installment land contract providing for forfeiture of payments upon noncompliance with contract, letter of purchaser stating that he was unable to make further payments, and that he would have to let the land go, was an abandonment of the contract, dispensing with necessity of vendor's giving notice of termination of contract in order to claim forfeiture of payments

## From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.

The Gearhart Park Company owned a tract of land which had been divided into lots and blocks. These lots were placed on the market and were being sold through salesmen employed by the Gearhart Park Company. The Title & Trust Company, a corporation, held the property in trust for the Gearhart Park Company and the former executed contracts and deeds for the benefit of the latter. On November 2, 1911, F. L. Kemmerer, the plaintiff, signed an instrument which reads thus:

"Original,          Gearhart Park          No. 1183
                    " 'By the Sea.'
"Main Office Corner Fourth and Stark Streets,
                    "Portland, Oregon, Nov. 2, 1911.
                    "Application Receipt.

"I hereby agree to purchase lot 4 block 1 Woodland Add. 'Gearhart Park,' in Clatsop County, Oregon, of Title and Trust Company, an Oregon corporation, and promise to pay said Title & Trust Company therefor the sum of $750.00, the purchase price thereof, as follows: $150 with this application, and $10.00 monthly, payable in accordance with the terms of a contract to be issued in lieu of this receipt, until the full sum of said (inserted) 'until first payment of $150.00 is paid bal. as contract' purchase price with interest thereon at 6 per cent per annum payable —— has been fully paid. The ownership of and title to said lot 4 to remain in said Title and Trust Company and not to be conveyed to me until paid for, and then conveyed to me by a good and sufficient deed of bargain and sale form. All taxes and assessments accruing after date of this application to be assumed and paid by me.

"Time is the essence of this agreement, and upon the failure of the purchaser to comply with the terms hereof within —— days from date of the acceptance or approval of this application by said Title & Trust

Company, said deposit shall be forfeited as liquidated damages.

"Received on account of the foregoing $10.00.
            "Purchaser: F. L. KEMMERER,
            "Address:    Seaside, Oregon.
    "GEARHART PARK,
        "By G. L. REES."

In addition to the ten-dollar payment made at the time the instrument was signed, the plaintiff made payments as follows:

"December 22, 1911, $10.00; January 13, 1912, $20.00; February 16, 1912, $10.00; April 18, 1912, $10.00; September 28, 1912, $20.00; April 8, 1913, $10.00; May 7, 1913, $10.00; June 12, 1913, $15.00; July 14, 1913, $15.00; September 8, 1913, $10.00."

At some time after November 2, 1911, the plaintiff entered into the possession of the premises. He cut a considerable quantity of wood off the property.

Under date of February 7, 1914, the plaintiff, writing from Salem, Oregon, addressed to the defendant a letter which reads as follows:

"I wrote you a month or so ago asking for an extension of time in hopes of being able to make up my back payments on Lot 4, Woodland Park Add. to Gearhart. I find however that I will be unable to do so as I have some unlooked for bills that I have got to pay. I am *up against it* rather hard or would be able to keep this tract, however, I will have to let it go. Thanking you for the fair treatment I have received at your hands,
            "I remain,
            "Yours truly,
                "F. L. KEMMERER."

Soon after receiving the Kemmerer letter the Title & Trust Company was instructed by O. W. Taylor, the president and general manager of the Gearhart

Park Company to cancel the "contract" with Kemmerer, and accordingly the words "Cancelled per letter of O. W. Taylor" were written on the instrument.

Referring to the Kemmerer letter, O. W. Taylor testified thus:

"We considered that this letter waived all of his rights, and he had dropped the question of purchasing entirely as we had had it up with him, and we have cases of that kind often,—not often, but once in a while, by people saying that they waive whatever rights they have to purchase and wish to give it up, and then we take possession of the land and try to sell it if we can.

"Q. Did you make any entry in your book relative thereto?

"A. What I do is to instruct the sales manager to resell the property and our maps are changed showing that the property is not sold and it is open for sale again, and the sales manager is so notified, and the Title & Trust Company the same way."

And again, when asked what was done after the receipt of plaintiff's letter, the witness Taylor stated that:

"We put the property back on the market and opened it for sale again, the same as we would any other property." The property was "later sold to another party * * about some time in July or August."

On January 19, 1915, the plaintiff caused a letter to be written to the defendant and three days afterward he caused a second letter to be sent to the defendant, demanding for the first time that the $140 paid by the plaintiff be returned to him. The defendant refused to return the money and on February 4, 1915, Kemmerer commenced this action for money alleged to have been had and received by the defendant for the

plaintiff.    The cause was tried to the court without a jury.    The trial court found:

"That, between the 8th day of September, 1913, and the 7th day of February, 1914, plaintiff made no payments whatsoever on said contract, and, on the 7th day of February, 1914, wrote to defendant renouncing and rescinding the said contract and abandoning said above-described real property; that, upon receipt of the said letter of plaintiff so rescinding and abandoning said contract and property, defendant cancelled said contract and declared forfeited all sums theretofore paid thereon by plaintiff."

The Title & Trust Company paid the taxes on the property for the years 1911, 1912 and 1913.

O. W. Taylor, the president of the Gearhart Park Company, testified that "there was a house built upon the property but when I come to look it over after this matter came up I found that it had been moved off to adjoining property."    AFFIRMED.

The plaintiff appealed from a judgment for the defendant.

For appellant there was a brief over the names of *Mr. Walter C. Winslow* and *Mr. Sidney J. Graham,* with an oral argument by *Mr. Winslow.*

For respondent there was a brief and an oral argument by *Mr. James L. Conley.*

HARRIS, J.—Apparently a printed or typewritten form had been prepared to be used by salesmen; and the form seems to have been drafted on the assumption that in most cases a deposit of $150 would be paid with each application.    However, in the instant case the parties probably adapted themselves to the financial situation of the plaintiff and instead of re-

quiring the payment of the $150 in a lump sum he was permitted to pay this amount as well as the remainder of the price in monthly $10 installments. An examination of the writing discloses that $750 is the purchase price. Every word which refers to the subject at all plainly contemplates the issuance of a contract providing for the payment of the final $600 in monthly installments of $10; and also, the language which was "inserted" in the instrument by the parties permits the plaintiff to make monthly $10 payments "until first payment of $150 is paid." It is obvious, too, that it cannot be said that the "deposit" mentioned at the end of the instrument meant more than the "first payment of $150."

1. The plaintiff contends that the writing does not meet the requirements of the statute of frauds and that "therefore, appellant is entitled to recover money paid thereunder." While it has been decided in *Davis* v. *Brigham*, 56 Or. 41, 47 (107 Pac. 961, Ann. Cas. 1912B, 1340), that the agreement need only be signed by the party charged yet, waiving any conclusion that might be deduced from that precedent, there was nevertheless sufficient part performance to enable the plaintiff to compel specific performance: *Johnson* v. *Puget Mill Company*, 28 Wash. 515 (68 Pac. 867). Moreover, while it is true that the writing is styled an "application," it is also true that this "application" was accepted by the defendant; for the Title & Trust Company not only accepted ten several payments in addition to the first ten-dollar payment but it also permitted the plaintiff to enter into possession of the lot and cut wood and, as we infer from the record, build a house upon the property.

2. The plaintiff earnestly insists that there was a mutual rescission of the agreement; and this conten-

tion proceeds upon the theory that the abandonment by the plaintiff was acquiesced in by the defendant and hence resulted in a mutual rescission. If the agreement was mutually rescinded the plaintiff is of course entitled to maintain this action: *Maffett* v. *Oregon & California Ry. Co.*, 46 Or. 443, 457 (80 Pac. 489); but it must be remembered, however, that as pointed out in *Stennick* v. *J. K. Lumber Co.*, 85 Or. 444, 478 (161 Pac. 97, 166 Pac. 951)—

"declaring a forfeiture for breach of the conditions of a contract is not rescission of the contract. It puts an end to the contract and extinguishes it in pursuance to its terms just as performance extinguishes it. The act of taking possession under a forfeiture clause is not an act of rescission or in avoidance of the contract, but the assertion of a right growing out of it": 13 C. J. 608.

The parties had a right to insert the forfeiture clause in the writing and since the plaintiff does not claim that the stipulation involves a penalty as distinguished from liquidated damages, the defendant is entitled to the benefit of the stipulation for a forfeiture and can retain the money paid to it, unless it can be said that the defendant has lost such benefit by failing properly to exercise its right: *Snider* v. *Lehnherr*, 5 Or. 386, 390; *Holbrook* v. *Investment Co.*, 30 Or. 259, 265 (47 Pac. 920); *Graham* v. *Merchant*, 43 Or. 294, 304 (72 Pac. 1088); *Mitchell* v. *Hughes*, 80 Or. 574, 588 (157 Pac. 965).

3-5. The language found in the forfeiture provision necessarily determines the right of forfeiture. A stipulation providing for the forfeiture of payments may be self-executing: *Maffett* v. *Oregon & California Ry. Co.*, 46 Or. 443, 454 (80 Pac. 489); *Gray* v. *Pelton*, 67 Or. 239, 243 (135 Pac. 755); *Potter*

*Realty Co.* v. *Derby,* 75 Or. 563, 572 (147 Pac. 548);
*T. B. Potter Realty Co.* v. *Breitling,* 79 Or. 293, 301
(155 Pac. 179); or the stipulation may do no more
than merely to confer an option upon the vendor, and
in that event a default in paying an installment does
not of itself work a forfeiture, but there must be a
declaration of forfeiture or some equivalent act or con-
duct: *Graham* v. *Merchant,* 43 Or. 294, 304 (72 Pac.
1088); *Higinbotham* v. *Frock,* 48 Or. 129, 131 (83 Pac.
536, 120 Am. St. Rep. 796); 13 C. J. 608.   A provision
for the forfeiture of payments will not be construed
to be self-executing unless unequivocal language is
used showing plainly and clearly that such was the
intention of the parties: 39 Cyc. 1384.   The instru-
ment involved in the instant case does not contain a
self-executing forfeiture clause; nor do we under-
stand that the defendant claims that a default in the
payment of a monthly installment *ipso facto* works a
forfeiture.

In the writing now being examined it is said that
"time is the essence of this agreement."   While it is
true that a blank space appears before the word
"days," it is nevertheless obvious that the parties
understood that Kemmerer was to make the "first
payment of $150" in monthly installments of $10 and
that they intended that time was to be of the essence
of the agreement to pay such monthly installments.
As already stated, the word "deposit" manifestly in-
cludes no more than the "first payment of $150."
It must be noted that the writing does not provide
for the forfeiture of any moneys except the "de-
posit"; and it must also be remembered that the writ-
ing contemplates that when the "first payment of
$150" is made a contract is to be issued in lieu of the
"application receipt," and the remaining $600 of the

purchase price is to be paid in monthly installments ''in accordance with the terms'' of the contract to be issued. The record is silent as to the terms of the contract ''to be issued.'' In other words, the purchase price of $750 is payable in part in accordance with the ''application receipt'' and in part in accordance with the terms of a contract to be issued. The first $150 is payable according to the terms of the ''receipt'' and the final $600 in accordance with the contract to be issued. Although the final sum of $600 was to be paid monthly yet it was to be paid in accordance with the terms, not of the application receipt, but of a contract not yet issued; and although the ''receipt'' states that the final $600 is payable in $10 monthly installments nevertheless the duty to commence such payments does not arise until the payment of the first $150 and the issuance of the contract.

6. The right of the defendant to forfeit the ''deposit'' depends upon the failure of the purchaser ''to comply with the terms'' of the application; and therefore, while the writing is not easy to construe, it is our opinion that the $140 could not be forfeited except upon default in the payment of the remaining installment due on the ''first payment of $150.'' Although time was made of the essence of the contract, nevertheless the Title & Trust Company waived strict compliance with the terms of the agreement and therefore unless it can be said that Kemmerer waived the right to notice, the Title & Trust Company could not successfully claim a forfeiture of payments made to it, without first notifying the purchaser that it intended to claim a forfeiture unless payment was made within a reasonable time: 39 Cyc. 1382, 1384. It must be remembered that the time for the payment of the

90 Or.—10

final installment of the purchase price had not yet arrived and since the instant case involves only the failure to make one or more intermediate payments it is to be distinguished from all those cases which involve a final installment and require the tender of a deed: *Reese* v. *Westfield,* 56 Wash. 415 (105 Pac. 837, 28 L. R. A. (N. S.) 956); 39 Cyc. 1376.

7. The plaintiff abandoned the contract: 39 Cyc. 1353. The letter written by Kemmerer on February 7, 1914, was equivalent to saying to the Title & Trust Company: "I abandon the contract and I waive and surrender whatever right I had to insist on additional time or notice of your intention to terminate the contract; notice to me would be an idle ceremony, and since I do not require notice, you may terminate the contract without previous notice." The law does not ordinarily require the doing of a vain thing: *Clarno* v. *Grayson,* 30 Or. 111, 126 (46 Pac. 426). Kemmerer waived and surrendered the right to notice: *Cummings* v. *Rogers,* 36 Minn. 317 (30 N. W. 892); 39 Cyc. 1385; the defendant promptly exercised its right; and there was a termination as distinguished from a pure rescission of the contract: *Stennick* v. *J. K. Lumber Co.,* 85 Or. 444, 478 (161 Pac. 97, 166 Pac. 951); 13 C. J. 608. See, also, *Kennedy* v. *Embry,* 72 Tex. 387 (10 S. W. 88); *Dunlap* v. *Green,* 60 Fed. 242 (8 C. C. A. 600); 39 Cyc. 1384.

The judgment is affirmed.        AFFIRMED.

MCBRIDE, C. J., and BURNETT and BENSON, JJ., concur.