Argued at Pendleton May 6, reversed July 23, rehearing denied September 17, 1929.

J. H. BOTTEMILLER v. M. R. BALL.

(279 Pac. 542.)

For appellant there was a brief and oral argument by *Mr. T. A. Weinke.*

For respondent there was a brief over the names of *Messrs. Angell, Fisher & Sabin,* with oral arguments by *Mr. J. D. Weed* and *Mr. H. D. Angell.*

ROSSMAN, J.—■■■ We shall first consider the controversy in regard to interest. The plaintiff contends that the contract requires the payment of interest annually beginning November 23, 1928. The defendant finds no provision for interest except upon overdue payments; he suggests that possibly the contract might be construed as exacting the payment of interest beginning in 1929; but, insists that none was payable before that year. He calls attention to the fact that the contract stipulates for interest on

the amount "still due and unpaid," and that the paragraph, which provides for the execution of notes when half of the $40,000 has been paid, makes no mention of interest. We have carefully reviewed the contract; its only mention of interest is in the requirement that it shall be paid upon the portion of the purchase price which is "still due and unpaid." The word "due," lexicographically denotes an amount that has matured; however, it is frequently employed in a broader sense to include sums which have not yet matured: Words & Phrases, 3d Series, p. 44. Since the parties, in the expression of their agreement, employed a word, which is capable of a dual meaning, and have left a doubt as to which meaning should be applied, we feel justified in relying upon the general context and apparent purpose of their contract to a greater degree than the precise meaning of the word "due." Both parties have interpreted the contract as one which binds the plaintiff to sell, and the defendant to purchase the property upon deferred payments of the purchase price. Such a contract would create a debt until the entire purchase money was paid. Since interest is generally payable upon debts, this circumstance argues strongly in favor of the plaintiff's contention in regard to interest. It is true that the clause, which makes provision for the acceptance by the plaintiff of purchase money notes when half of the property's price has been paid, makes no mention of interest, but we believe that the exaction of interest upon the portion of the principal "still due and unpaid" refers to the unpaid principal, even after the notes have been executed; in other words it is our opinion the notes would bear the stipulated interest of 6 per cent. Having placed this construction upon the contract the foundation for much

of the defendant's argument is removed. It is a general rule that if the terms of a contract render its meaning in regard to the payment of interest doubtful, it should be construed most strongly against the party who contracts to pay it: 33 C. J., Interest, § 42. The foregoing circumstances and the rule of construction just mentioned persuades us that the contract provides for the payment of interest upon deferred installments of the principal. We find no merit in the suggestion that interest was not payable until the year 1929; the interest clause provides for its payment annually, and although it is a portion of the paragraph which mentions the years 1929, 1930, 1931 and 1932 we believe that is sufficiently clear that its payment was not deferred until 1929. The foregoing being our conclusions, it follows that interest was payable November 23, 1928, and since the defendant admits that he made no payment upon that occasion, his contract was thereby breached. Further, this conclusion renders it unnecessary for us to state our consideration of the alleged breach concerning the cultivation of the soil.

█ █ We come now to the contention of the defendant that the complaint does not disclose any controversy requiring the attention of a court of equity. It is to be observed that the defendant interposed no such objection to the complaint. It is true, that when the first witness was called he objected on the ground that the suit was not of an equitable nature, but his answer, filed prior to that time, sought equitable relief. This court has held that a defendant waives his right to object to the jurisdiction of the court, when without interposing the objection, he answers and claims affirmative equitable relief, provided, however, that the case is not entirely lacking of such cogni-

zance: *Bowsman* v. *Anderson,* 62 Or. 431 (123 Pac. 1092, 125 Pac. 270), *Gantenbein* v. *Bowles,* 103 Or. 279 (203 Pac. 614), *Hume* v. *Burns,* 50 Or. 124 (90 Pac. 1009), and *Security Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174). The objection that the plaintiff was out of possession, and yet sought the removal of a cloud from the title of his land was waived by the answer, which makes no mention of the nonpossession, and seeks equitable relief: *O'Hara* v. *Parker,* 27 Or. 156 (39 Pac. 1004); 9 C. J., Cancellation of Instruments, § 57.

■■ But, there is no need of endeavoring to buttress the jurisdiction of equity in this suit by examining the answer. The parties had entered into a contract concerning real and personal property of great value; the defendant was in possession by virtue of a contract which had been recorded. He denied the breach and sought a decree which would have yielded to him an interest or estate in the property. The cancellation of the contract was a remedy which equity alone was adapted to afford, and the law courts provided none as complete: *Tillamook Co.* v. *Wilson River Road Co.,* 49 Or. 309 (89 Pac. 958); *State* v. *Warner Valley Co.,* 56 Or. 283 (106 Pac. 780, 108 Pac. 861). From 9 C. J., Cancellation of Instruments, Section 56, we quote:

"Equity has jurisdiction to cancel, when the instrument is a deed or other document concerning real estate, which, although inoperative if suffered to remain uncanceled, would throw a cloud upon plaintiff's title to the lands which it embraces, or to which it refers. This is part of the well known and firmly settled jurisdiction of equity the remedy at law being considered inadequate. And the relief of cancellation may be granted even if a technical forfeiture of the estate which constitutes the encumbrance follows,

where it appears that all rights under it have been lost by the willful and prolonged neglect of the party who otherwise might have preserved and enforced his title."

When the parties prepared their contract they evidently anticipated such a situation as now confronts them and made provision as to how the controversy should be disposed of; that is, the defendant should "surrender and deliver up the said property and premises to the seller." They are agreed that this court has held that when a contract prescribes a remedy for a breach that remedy is generally exclusive and will be enforced. The following adjudications justify their conclusions: *Lea* v. *Blockland,* 122 Or. 230 (257 Pac. 801); *Kemmerer* v. *Title & Trust Co.,* 90 Or. 137 (175 Pac. 865); *Moffitt* v. *Oregon & Cal. R. Co.,* 46 Or. 443 (80 Pac. 489). The defendant employs the foregoing circumstances as the basis for an argument that, therefore, actions of ejectment and of replevin would have sufficed. If the defendant had quit possession the moment the breach occurred, and had expunged from the records his contract, the plaintiff upon repossession, could have asked for no more. But as we have observed before, after the breach the defendant insisted upon continued possession, asserted that his contract was still subsisting, and through lack of attention to the cultivation of the soil brought about a condition where a receiver was necessary unless the following year's crop was to be foregone. Under such circumstances a court of equity alone was adequate to provide the required remedy. A cancellation of the contract and a restitution of possession will therefore be decreed.

■ ■ The answer alleges that the plaintiff, through officious intermeddling and the institution of an un-

warranted suit sought to force the defendant to breach his contract. The defendant avers damages through those circumstances, and contends that the portion of the purchase price paid should be returned to him, and that he should be permitted to harvest the present crop growing upon 375 acres. He does not ask for a privilege of discharging overdue payments, and of thereby reinstating his contracts, but prays for "a full and complete settlement of this contract." While the evidence indicates that the plaintiff was diligent in the protection of his interests, we find none which would support a finding of any harassment. The defendant has paid the plaintiff $1,700 in cash and delivered to him one half of the 1928 crop of the value of $2,170; but received $1,600 worth of seed, feed and summer-fallow. In addition the defendant has had possession of a valuable farm, its machinery, livestock and other equipment for approximately two years' time. Interest at the agreed rate of 6 per cent upon $40,000 is $2,400 per year. Hence it is apparent that the venture has brought the plaintiff no profit. These being the circumstances a return of any portion of the paid purchase price would be unwarranted. But, to oust the defendant at the very moment when the crop is ready for harvesting would be harsh, if a means can be found whereby he can work out his interest without sacrificing the plaintiff's rights. The plowing of the land and the seeding was done before this suit was instituted; those acts of husbandry have conferred a value upon the land. In a suit by a vendor for rescission the court may decree an allowance for the value of any permanent and valuable improvement placed upon the land by the vendee: 9 C. J., Cancellation of Instru-

ments, p. 1267, § 227; 4 R. C. L., p. 512. In other words the plaintiff should not be entitled to derive any unconscionable advantage from the cancellation. The plaintiff offered much testimony to the effect that the defendant committed waste, and thereby damaged the former's estate. He apparently relies upon the effect of this evidence to offset the value of the present crop. But, the ranch was in a very poor condition through neglect and lack of occupancy when the defendant went into possession; after careful consideration of all this evidence we conclude that the defendant did not injure the plaintiff's reversion.

Since both parties pray for a rescission and cancellation of the contract, the decree should grant such relief forthwith. If the plaintiff so desires, the decree may contain a judgment in his favor for interest upon the unpaid portion of the purchase price up to the time this suit was filed. Should the defendant still desire to harvest the present crop, the decree should provide that he may retain possession for such reasonable time as is necessary for those operations, not extending beyond October 1, 1929. At the conclusion of the harvest the decree will require his prompt quitting of possession. If he signifies no intention of harvesting this crop he should withdraw from the premises at once. By way of reimbursing the plaintiff for the use of his property, while the present crop was growing, the decree should provide for delivery to the plaintiff of such portion of the grain harvested as constitutes the market rental value of the ranch. If the parties cannot agree upon that item the court may determine it by receiving evidence.

The cause will be remanded to the Circuit Court, with instructions to enter a decree in harmony with

the foregoing. Costs will be allowed to neither party.

REVERSED AND REMANDED, WITH DIRECTIONS.
REHEARING DENIED.

BEAN, McBRIDE and RAND, JJ., concur.