Motion to dismiss denied March 6, 1957, argued July 9, 1959,
affirmed August 11, 1959

## MOBERG ET AL v. BAKER ET UX

307 P. 2d 759
342 P. 2d 828

Koerner, Young, McColloch & Dezendorf, Portland, for the motion.

William C. Ralston, Portland, contra.

PER CURIAM.

The respondents have moved for an order dismissing the appeal and affirming the judgment on the ground that the appellants failed to file the short transcript on appeal within the time prescribed by ORS 19.070.

The appeal was perfected January 5, 1957. The statute allows 30 days after the appeal is perfected in which to file a transcript with this court, but under Subdivision 3 of ORS 19.070, "The trial court or the judge thereof, or the Supreme Court or a justice

thereof, may, upon such terms as may be just, by order, enlarge the time for filing the transcript, but the application for such order shall be served and filed within the time allowed to file transcripts, and the order shall be made within 10 days thereafter.'' In this case the time for filing the transcript expired on February 5, 1957, unless enlarged in accordance with the terms of the foregoing provision. On January 29, 1957, on application of appellant's counsel a circuit judge made an order extending the time to February 28, 1957. No application for such order was served on respondents' counsel or filed as required by the statute. It was an oral, ex parte application, and the order was therefore unauthorized and void. *Jairl v. Jairl,* 163 Or 529, 97 P2d 949.

■ The short transcript, together with the official court reporter's transcript of testimony and the exhibits, has now been filed with the clerk of this court. Appellants' failure to file the short transcript within the time allowed by the statute is ground for dismissal of the appeal. But this court, upon cause shown, is authorized to relieve from such failure, provided the appellants perform the omitted act within 30 days after service of notice of such failure. ORS 19.030 (3). Appellants have asked for this relief and have filed the short transcript within the 30-day period. Counsel for respondents call our attention to Rule 35 of the Circuit Court for Multnomah County which requires copies of all motions to be served on the adverse party, and argue that rules of court are as binding as the law itself, and that this court has not been authorized to relieve from the failure to comply with Rule 35. But rules of court are binding only insofar as they do not conflict with a valid statute. *State v. Reyes,* 209 Or 595,

303 P2d 519. Respondents' position would put the rule above the statute and cannot, therefore, be sustained.

This court views with concern the casual attitude occasionally taken by some members of the bar toward the rules of procedure, whether found in the statute or in the rules of court. These rules are easily complied with if a reasonable amount of care is used. Failure to comply with them adds unnecessarily to the burdens of this court, as some of our recent opinions dealing with motions similar to this one show. See, e.g., *State v. Reyes,* supra; *Fields v. Fields,* 213 Or 522, 326 P2d 451. But we have felt, ever since the amendment of the appeals statute in 1943 (Oregon Laws 1943, ch 119, now ORS 19.030), that one of its purposes was to vest a large measure of discretion in this court in the matter of granting relief from such departures from the letter of the law, and that the words "good cause," in the statute, should be given a liberal interpretation in favor of the litigant's right to have his case heard on the merits. See *Williams v. Ragan,* 174 Or 328, 335, 143 P2d 209.

The motion for relief is, therefore, allowed, and the motion to dismiss is denied.

*Wm. C. Ralston,* Portland, argued the cause and submitted a brief for appellants.

*James C. Dezendorf,* Portland, argued the cause for respondents. With him on the brief were Herbert H. Anderson, Marshall C. Cheney, Jr., and Koerner, Young, McColloch & Dezendorf, Portland.

Before Lusk, Presiding Justice, and Sloan, O'Connell and Millard, Justices.

LUSK, J.

This is a suit to reform a contract, for an injunction, and to recover damages for breach of the contract as reformed. The circuit court entered findings of fact and conclusions of law and a decree for the plaintiffs, and defendants have appealed.

Plaintiffs held the exclusive rights in Oregon and Washington to use a patented freezer for the manufacture of an ice milk product and the trade name, Dairy Queen. On September 27, 1948, plaintiffs entered into a contract in writing with the defendants, under

which the latter were licensed to operate one Dairy Queen store in Portland. On March 1, 1949, this contract was superseded by another, which licensed the defendants to operate not less than four stores in a described area in Portland. Both contracts gave the defendants the right to the exclusive use in the territory of such patented freezers, and provided for the payment, in addition to certain fixed sums, of a royalty of 34 cents a gallon on "all Ice Cream Mix" used in the freezers during the term of the contract, or so long as the defendants should use the freezers.

■ Plaintiffs alleged in their complaint that the actual agreement of the parties, before it was reduced to writing, was that the royalty stipulated was to be paid on "all mix" used in the freezers, and that the written stipulation was the result of a mutual mistake. There is evidence, not only on behalf of the plaintiffs but also given by the defendant, Dorsey D. Baker, which tends to support the claim of the plaintiffs as to the real terms of the agreement. Not the least persuasive evidence is the fact that the defendants, for a period of two years, paid a royalty of 34 cents a gallon on ice milk mix used in three stores, thus manifesting by conduct their understanding of the agreement. The circuit judge found that the mistake alleged was established by the evidence, and there is no good reason why this court should set aside his finding.

■ Defendants continued to pay royalties on the product of three of their stores until June, 1951. No royalties at all were paid on the product of a fourth store. After the commencement of this suit on July 17, 1953, the court issued an injunction *pendente lite* restraining the defendants from using the name Dairy Queen and Dairy Queen advertising and the freezers

previously delivered to them. Plaintiffs claimed damages in the amount of the unpaid royalties up to the time the injunction was issued. This amount, based on the quantity of mix used in all four stores, was stipulated to be $17,356.66. One of the stores whose business was included in this sum, and which is referred to by the parties as the fourth store, had never used Dairy Queen machines or the name Dairy Queen. Instead, it used the name Dairy King, which the plaintiffs say, and we agree, is deceptive. See *Milgrim Bros. v. Schlesinger*, 168 Or 476, 123 P2d 196; *N. K. Fairbank Co. v. Luckel, King & Cake Soap Co.*, 102 F 327. The other three stores ceased using Dairy Queen freezers after June, 1951. The court awarded damages to the plaintiffs in the amount stipulated. Defendants challenge the ruling on the ground that they were only liable for royalties while they were using Dairy Queen freezers.

The contract of March 1, 1949, provided that its duration should be for the lifetime of Patent No. 2080971, a patent for Freezing and Dispensing Machines issued to Harry M. Oltz, which expired on May 18, 1954; and defendants agreed to erect and operate four stores at least in the designated area and not to use any other type of freezer than Dairy Queen freezers in that area during the life of the contract. This covenant the defendants violated, and the answer to their argument is that they will not be permitted to escape the payment of damages by pleading a breach of their contract. We think that a fair measure of the damage sustained by plaintiff is the amount of the royalties agreed upon in the contract. See 87 CJS 603, Trade-Marks § 213.

By their amended answer, the defendants raised

several affirmative defenses. The first is based on the following provision of the contract of March 1, 1949:

"In the event the Buyer fails to make the required payments of royalty, or fails to perform the covenants to be performed by him under the terms of this agreement, the Seller shall give to the Buyer a notice in writing that if such payments are not made, or such covenants performed within thirty (30) days after the date of said notice, that this agreement shall be terminated and forfeited, but if such payments are made or such covenants are performed within the thirty day period, no further action shall be taken, but if the payments are not made or the covenants not performed, then the Seller shall have the right to terminate this agreement and retain all payments made heretofore as liquidating damages and thereafter, the Buyer shall have no further right to use Dairy Queen Freezers or to use the trade name 'Dairy Queen' in the above mentioned territory."

It is contended that the remedy thus provided is exclusive. Among the cases relied on by the defendants is *Bottemiller v. Ball,* 130 Or 255, 279 P 542, 69 ALR 951. But the broad statement in that opinion regarding the exclusiveness of remedies expressly provided for in a contract (see 130 Or 264) was limited in *Keller v. Lonsdale,* 216 Or 339, 339 P2d 112. A stipulated remedy may be of such a character as to import an intention that it should be exclusive, as, for example, in a contract for the sale of land where the parties agree that a default on the part of the vendee shall render the agreement "void as to both parties without notice." *Potter Realty Co. v. Derby,* 75 Or 563, 572-573, 147 P 548. Other forfeiture clauses, however, which are not self-executing are held to be for the benefit of the seller, and not exclusive, as in *Maffet v. Or. & Cal. R. Co.,* 46 Or 443, 80 P 489 (commented on in *Potter Realty Co. v. Derby,* supra); *Holland v. Bradley,* 140 Or 258,

12 P2d 1100; *Lea v. Blokland,* 122 Or 230, 257 P 801; and *Kemmerer v. Title & Trust Co.,* 90 Or 137, 175 P 865. In 18 Am Jur 156, Election of Remedies § 36, it is said:

> "If the contract specifically provides that the remedies enumerated shall be the only course of settlement, a party to it is limited to the remedies mentioned. Where, however, there is no limitation in the contract which makes the remedies enumerated therein exclusive, a party is entitled to the remedies thus specified, or he may at his election pursue any other remedies which the law affords."

See, also, *J. M. Hamilton Co. v. Battson,* 99 Mont 583, 44 P2d 1064, 101 ALR 520. Perhaps it is well not to generalize too much with respect to this subject. Certainly, the solution in most cases must depend on the wording of the particular contract. The provision here, as we view it, was not intended to.be exclusive, but it means simply that the Seller, if he desires to exercise the right to terminate the contract for default of the Buyer, may not do so unless he first gives the latter thirty days written notice of his proposed action. It does not affect the right of the Seller to bring an action on the contract or for its breach or to proceed in equity where equitable grounds for relief exist.

In other affirmative answers, the defendants alleged that they were induced to enter into the contract by fraudulent representations of the plaintiffs regarding the freezers and that, contrary to the terms of the contract, the freezers delivered to defendants by the plaintiffs did not conform in certain particulars to the specifications of Patent No. 2080971. These defenses involve nothing but questions of fact, which the circuit judge resolved against the defendants. We have read the testimony and agree with his conclusions.

The decree is affirmed.