Argued March 25, affirmed June 2, 1925.

## JOHN L. WHITE *v.* OREGON REALTY EXCHANGE INVESTMENT CO. ET AL.

(236 Pac. 269.)

**Exchange of Property—Representations as to Value Held Matter of Opinion.**

1. In view of plaintiff's investigation and independent advice in connection with proposed exchange of property, defendant's representations as to value of his property *held* mere expressions of opinion, and not representations of fact.

**Evidence—Common Knowledge That Actual Value and Trade Value of Real Property Differ Materially.**

2. It is common knowledge that actual cash market value and trade value of real property generally differ materially.

**Exchange of Property—Fraud in Exchange of Property Held not Shown.**

3. In suit for rescission of contract for exchange of property, evidence as to destruction of prepared exchange contract by defendant *held* not to show that plaintiff was thereby defrauded.

---

1. What amounts to false representation of existing fact, see note in 1 Ann. Cas. 980. See, also, 12 R. C. L. 247.

3. See 12 R. C. L. 436.

Contracts—Person not Relieved from Improvident Contract When Fairly Entered into.
4. Courts will not relieve persons from improvident contracts when entered into as result of fair dealing.

See (1) 23 C. J. 199. (2) 23 C. J. 59. (3) 9 C. J. 1256. (4) 13 C. J. 366. (5) 23 C. J. 212.

From Marion: George G. Bingham, Judge.

Department 2.

This suit to rescind a contract of exchange of property arose out of the following facts: The plaintiff, a farmer of Linn County, desiring to sell his ranch, listed it for sale with John Howard, a real estate broker, whose office and place of business is in the City of Portland. Will E. Purdy, president of the defendant corporation, observed press advertisements of the property listed, and went to Portland to see Howard in reference to exchanging for the same certain real property in Salem. Howard wrote to his client, the plaintiff herein, concerning what Purdy, on behalf of his company, had to offer, and soon thereafter all parties interested, together with Howard, met at Salem to consider the advisability of consummating a deal. After an inspection of the property under consideration, the parties hereto, on May 25, 1922, entered into the following written agreement:

"This agreement made this day above written by and between W. E. Purdy, trustee, party of the first part, and J. L. White, party of the second part, whereby party of the first part agrees to convey to party of the second part the following described property: Lots one and two, University Addition to the City of Salem, State of Oregon, subject to a mortgage of $1,500; also one half interest in the

4. See 6 R. C. L. 997.

bath house located in the basement of the Oregon Building, City of Salem, said interest to be free and clear of all incumbrance.

"In exchange for above-described property, party of the second part agrees to convey the following described property: 120 acres located in Section one, township 10 south, range 2 west of Willamette Meridian, Linn County, State of Oregon, subject to a mortgage of $1,500.

"Party of the second part also agrees to deliver title to all farm implements, stock, and crop to party of the first part. It is also agreed that possession of above property is to be given one to the other as soon as deeds are passed, which shall (be) within thirty days from herein date."

Plaintiff alleges that he was induced to enter into the above contract through the false and fraudulent representations of the defendant that the "Oregon Bath House had been making and was capable of making $300 per month net profit, and that the said Oregon Bath House was in its present condition reasonably worth $4,000, and that the real property mentioned and described as belonging to defendant Oregon Realty Exchange Investment Co., was reasonably worth $8,000." Plaintiff asserts that he was ignorant of property value in the City of Salem and relied exclusively upon the representations of Purdy in reference thereto. It is charged that the real property above mentioned, upon which is located what is designated in the record as the "Southern Pacific Apartments," was not worth in excess of $3,000, and the bath-house was a losing proposition instead of making a net income of $300 per month. Plaintiff avers that he has performed all the conditions of the contract on his part, but that defendant has failed to furnish an abstract of title and at the time of the commencement of this suit had not conveyed to

him the lots or bath-house in question. In a supplemental complaint plaintiff alleges a mutual rescission of the contract, in that the defendant, subsequent to the filing of the original complaint, assumed control, ownership and management of the bath-house and apartment house, and has ever since appropriated the rent, income and profit accruing from their operation to its own use. Defendant denies the charge of fraud and alleges that plaintiff had every opportunity to inspect the property in question, and that after making a complete investigation he relied upon his own judgment in making the contract sought to be rescinded. It is further alleged in defendant's answer that it fully performed the terms of the contract within the time therein specified, and that at the time suit was commenced herein plaintiff was vested with title in and to the property which defendant contracted to convey. Defendant also denies that it acquiesced in or agreed to the alleged rescission of the contract by plaintiff; and asserts that after plaintiff had repudiated his agreement and refused to take possession of the apartment house and bath-house it was necessary for it to retain charge and management of the same, but that it is ready and willing to account to plaintiff for any income received from the property during the time it has been in its possession since it should have been accepted by plaintiff. On the issues thus briefly stated the Circuit Court, after trial, made findings of fact, in part, as follows:

"Prior to the making of the above agreement the plaintiff and his agent, John E. Howard, a real estate broker, made a personal inspection of the defendant's properties, and after such personal inspection the above-mentioned contract was prepared by plaintiff's broker and executed by the respective

parties. Afterwards, and about the fifth day of June, 1922, the necessary bills of sale, deeds, mortgages, assignment of insurance policies, were executed and delivered for the purpose of carrying such agreement into effect. Some differences exist between plaintiff and defendant respecting the taxes for the years 1920 and 1921, but such differences are minor and do not affect the merits of the present controversy.

"There was no attempt on the part of the defendant to prevent the plaintiff from making a full investigation in the matter, or to forego further inquiry after the plaintiff and his broker made an investigation of the rooming house and took time to consider whether the plaintiff would make the exchange. The evidence tends to show that the defendant fixed a value on its property in Salem, and the plaintiff fixed a value on his farm in Linn County, and the plaintiff was not prevented in any way from verifying the correctness of such estimates of value.

"Before the plaintiff turned over the possession of the Linn County farm to the defendant, and before he entered into the possession of the rooming house in Salem and the half interest in the bathhouse, and on the 10th day of June, 1921, he commenced this suit to rescind the agreement of exchange, and without first having made any offer, other than that contained in the complaint, to restore the defendant to the situation it was in before the conveyances above referred to were made, delivered, and placed of record in Linn and Marion counties.

"The plaintiff has made no effort to take possession of the properties he was to receive, and the same have been cared for by the defendant, and the defendant has not acquiesced in the plaintiff's attempted rescission of the agreement to exchange properties."

Based on these findings, the court decreed that plaintiff's suit be dismissed, and awarded defendant its costs and disbursements. Plaintiff appeals.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Walter C. Winslow.*

For respondents there was a brief and oral argument by *Mr. Albert H. Tanner.*

BELT, J.—1. Was plaintiff defrauded as alleged? After careful study and consideration of the evidence, we believe, as did the trial court, that plaintiff dealt with the defendant at arm's-length and with his eyes open.  He had listed his property with real estate agents for four or five years, and, prior to this transaction, had investigated property values in the City of Salem with a view of disposing of his property.   It is fair to assume that he knew as much about real estate values in Salem as the defendant did about farm values in Linn County.   Furthermore, he had the benefit of the advice and knowledge of Howard, his broker, who accompanied him and his wife at the time the property was inspected, and prepared the contract which the parties signed.  Assuming that defendant made the representation alleged relative to the value of the lots upon which the apartment house is situated, we think, in view of all the facts and circumstances, that it was merely a matter of opinion, and not a representation of fact upon which fraud could be predicated.  We are not unmindful that a representation of value may under certain circumstances amount to fraud, but not so in the instant case.  This court has many times declared the law applicable to the question under consideration, and we deem it unnecessary to review the authorities again.  Mr. Justice RAND, speaking for the court, in *Castleman* v. *Stryker et al.,* 107 Or. 48 (213 Pac. 436), aptly says:

114 Or.—41

"Where parties to a contract stand on equal footing and have an equal means of knowledge, and there is no relation of trust or confidence between them, fraud cannot be predicated on a representation as to value. Value is largely a matter of judgment and estimation upon which men may differ; hence, representations of value, as a general rule, are not material: 12 R. C. L., p. 281."

2. Both parties, no doubt, placed a somewhat inflated value on their respective properties, as is so often done in cases of trade or exchange. It is common knowledge that actual cash market value and trade value of real property generally differ materially.

3. After the above memorandum agreement was executed, it was understood between the parties that Howard, when he returned to Portland, was to prepare another form of contract, giving a more detailed statement of their agreement. Howard, on the following day, made the contract in triplicate in accordance with the directions stated, and mailed each party a copy. Plaintiff strongly urges as evidence of fraud that Purdy, in the presence of himself and wife, burned all copies of the last agreement prepared by Howard. We have closely scrutinized this transaction, but do not believe it indicates a purpose to defraud plaintiff. Purdy, at the time of burning these papers, had not signed the same, and says that what he did was with the knowledge and consent of plaintiff. Howard, in the proposed contract, had fixed the value of the property exchanged at the sum of $10,000, and provided for payment of his commission as a broker on such basis. Purdy, according to the testimony of plaintiff, put the papers in the stove, saying, "That will end up this commission business." Purdy's explanation of this incident is strongly sub-

stantiated by the following significant letter written by plaintiff to Howard on June 6, 1922:

"Dear Friend: The deal is going all right, but I do not get possession until the 14th. I do not consider the property worth over $6,000. Therefore I could not pay over $150 commission. I will take $6,000 cash for it quick. You will have to settle with Mr. Purdy for his part of commission. I settle mine. I will send you a check for my part as soon as the exchange is made. Yours truly," etc.

It may be that Purdy and the plaintiff had conceived the idea of avoiding payment of the broker's commission, but we fail to see wherein this transaction tends to establish fraud as alleged by plaintiff.

4. We are not clearly and satisfactorily convinced that the proof establishes the other allegations of fraud, and we concur in the findings of the trial court. Such findings, while not conclusive, are highly persuasive. The trial judge has a decided advantage over this court in passing on questions of fact, and we ought to be and are hesitant to disturb his conclusions. It may be that plaintiff has made a bad bargain, but it is not the province of courts to relieve persons from improvident contracts when entered into as a result of fair dealing.

Appellant cites many authorities in support of his contention that while the contract was executory on the part of the defendant, he was entitled to rescind the same, regardless of the element of fraud; and, having done so, defendant's only recourse was an action for damages, if plaintiff's rescission was unwarranted. It is unnecesary to consider this contention for the reason that we think defendant had fully performed its contract prior to the commencement of this suit. Authorities cited bearing on executory contracts have no application.

The contention that there was a mutual rescission of the contract is wholly untenable. It is clear that plaintiff soon became dissatisfied with his trade, and was looking for an opportunity to rescind the contract. He refused to take possession of the property conveyed to him, and because defendant was obliged to retain possession and operate the business, it cannot reasonably be contended that it thereby acquiesced in plaintiff's attempted rescission. Defendant's conduct was not inconsistent with the contract and indicated no intention to abandon the same.

The decree of the lower court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.