Argued at Pendleton May 4, affirmed July 12, rehearing denied August 30, 1927.

# A. H. LEA v. ANDREW BLOKLAND ET AL.

### (257 Pac. 801.)

**Vendor and Purchaser—Purchaser cannot Rescind Contract for His Own Default.**

1. Default of purchaser desiring to rescind or annul land contract is not ground for such rescission, since party cannot take advantage of his own breach of contract.

**Set-off and Counterclaim—Vendors, Having Been Made Parties to Action by Assignee of Purchase-money Note Against Purchaser, by Purchaser's Equitable Answer, may Counterclaim for Amount Due Under Contract.**

2. In action against purchaser by assignee of purchase-money note, in which defendant filed equitable answer for cancellation of sale contract causing vendors to be brought in as parties, vendors may counterclaim against purchaser for amount due them under contract.

**Equity—Equity, Having Assumed Jurisdiction, will Determine All Issues.**

3. Equity, having assumed jurisdiction in cause, will retain it and determine all issues.

**Contracts—Neither Party may be Relieved from Agreement Because He Did not Use Good Business Judgment or Contract was not Profitable.**

4. Where parties are competent to contract, neither can be relieved from agreement for reason that he did not use good business judgment or that contract was not as profitable as expected, in absence of fraud, undue influence, duress, or mistake.

**Damages—Parties to Executory Land Contract may Stipulate for Damages in Case of Default by One.**

5. It is competent and proper for parties to executory contract for sale and purchase of land to stipulate as to damages in case of failure of one of parties to comply with contract.

**Damages—Clear Stipulation for Forfeiture in Land Contract will be Enforced.**

6. Clear stipulation for forfeiture in contract for sale of land will be enforced, where not contrary to public policy.

**Vendor and Purchaser—When Land Contract is Made, Vendor and Purchaser are, in Equity, Each Deemed Trustee for the Other.**

7. Where contract is made for sale of land, vendors are, in equity, immediately deemed trustees of real estate for purchaser, and purchaser is deemed trustee of purchase money for vendors.

---

7. Effect of contract for sale of land, see notes in L. R. A. 1916C, 461, 478; 57 L. R. A. 648. See, also, 27 R. C. L. 464.

Vendor and Purchaser—Defaulting Purchaser cannot Recover Anything from Vendors, Who Asked Amount Due Under Land Contract Providing That Time was of Essence and That Purchaser Could not Recover Payments.

8.   Where contract for sale of real estate provided that time was of its essence and that no payments could be recovered by purchaser, latter in default cannot by counterclaim recover anything from vendors, who asked for amount due them under contract.

Vendor and Purchaser—Action will Lie for Overdue Installments of Purchase Price Under Executory Land Contract, in Which Promises to Pay were Independent of Agreement to Convey.

9.   Where contract for sale of land is executory and promises to pay purchase money, except last installment, are independent of vendor's agreement to convey, action will lie for unpaid and overdue installments of purchase price.

Vendor and Purchaser—Notes for Purchase Price Given Under Land Contracts are Independent Promises, Where Promise to Pay are Independent of Agreement to Convey.

10.   Where promissory notes are given for purchase price under provision of contract for sale of land, in which the promises to pay purchase money, except the last installment, are independent of vendor's agreement to convey, they are independent promises.

Vendor and Purchaser—All Installments Except Last Under Land Contract Requiring Conveyance Only After Full Payment are Independent Promises.

11.   Where payments under land contract are to be made in installments and conveyance is not to be made until after full payment, all except last installment are independent promises.

---

Contracts, 13 C. J., p. 607, n. 98, p. 608, n. 39, 40, p. 611, n. 92, p. 613, n. 42, p. 614, n. 59.

Damages, 17 C. J., p. 931, n. 38.

Equity, 21 C. J., p. 134, n. 5.

Specific Performance, 36 Cyc., p. 565, n. 50.

Vendor and Purchaser, 39 Cyc., p. 1303, n. 20, p. 1307, n. 52, p. 1308, n. 53, p. 1340, n. 67, p. 1422, n. 30, p. 1903, n. 28, p. 1911, n. 8, 9, p. 1912, n. 10, p. 2055, n. 5, p. 2115, n. 66.

From Union: J. W. KNOWLES, Judge.

In Banc.

On the first day af May, 1920, Edna Reynolds owned a tract of land in Union County, Oregon, embracing approximately 1720 acres.   On this date she

---

9.   See 27 R. C. L. 611.
11.   See 27 R. C. L. 460.

and her husband, J. E. Reynolds, hereinafter called the interveners, entered into a written agreement with appellants, Andrew Blokland and Mary A. Blokland, his wife, whom we will hereinafter refer to as the defendants. Under the terms of this instrument the defendants undertook to purchase this land for a total consideration of $26,000, and to pay for the same in ten equal installments of $2600 each, with interest on deferred payments at 7 per cent per annum. The contract contained among others the following provisions:

"It is further agreed by and between the parties hereto that time is of the essence of this contract, and in case the parties of the second part, (Bloklands) shall fail to make the payments as herein provided, and each of them, or fail to keep any agreements herein contained, then this agreement shall, at the option of either of the parties of the first part, be null and void, and all rights and interests created or then existing in favor of the parties of the second part as against the parties of the first part hereunder, or to any payment theretofore made thereon, shall utterly cease and determine, and the right to the possession of the premises above described, and all other rights acquired by the parties of the second part hereunder, shall revert to and revest in the said parties of the first part, without any act of re-entry or any other act of the said parties of the first part to be performed, and without any right of the parties of the second part to the return, reclamation or compensation for money paid or received on account of the proposed purchase or sale of said property as above described, as fully and perfectly as if this contract and such payments had never been made, and all payments theretofore made on this contract are to be retained by, and belong to the parties of the first part, as the agreed reasonable rent of said premises up to the time of the said default. And the said parties of

the first part shall, in case of such default, have the right immediately, or at any time thereafter, to enter upon the land aforesaid, without any process of law, and take immediate possession thereof, together with all the improvements and appurtenances thereon or thereunto belonging.''

Immediately upon the execution of the instrument by Andrew Blokland and wife, they went into possession of the premises and continued in such possession until the latter part of the year 1924.

On the date of the execution of the contract, May 1, 1920, Andrew Blokland executed and delivered to Mrs. Reynolds a promissory note signed ''Blokland Bros., A. Blokland.'' This note, in the principal sum of $2600, was made payable on or before December 31, 1920, to the order of Mrs. Reynolds. It bore interest at the rate of 8 per cent per annum from May 1, 1920, and represented the first payment of the purchase price. On May 1st, of the following year, Andrew Blokland executed and delivered to Mrs. Reynolds another note signed ''Blokland Bros.'' This instrument is in the principal sum of $4,238, and bears interest at the rate of 8 per cent per annum. It represented the second installment due under the contract in the principal sum of $2600, with accrued interest on the unpaid balance of the purchase price, or $23,400. This note was payable six months from date.

In June of 1924 these two notes were assigned to plaintiff A. H. Lea. At this time both notes were long past due and Blokland was in default as to each of them. On September 15, 1924, Lea brought an action at law against Andrew Blokland and Garret Blokland as partners, doing business under the firm name of ''Blokland Brothers'' for the balance due on these notes. In his complaint Lea admits a

credit on the note of date May 1, 1920, in the sum of $1,000 paid January 8, 1921, also a credit in the sum of $1291.44, paid on November 15, 1922, and a further credit in the sum of $200, paid on January 5, 1922, leaving a balance due on said note at the time of the filing of the complaint in the sum of $610.77. On the second note Lea admits a credit on account of interest paid November 1, 1922, in the sum of $508.56, and demands judgment in the aggregate sum of $5,482.04, with interest thereon at the rate of 8 per cent per annum, from the fifteenth day of September, 1924, together with attorney's fees.

To the complaint of the plaintiff, Lea, the defendant, Andrew Blokland, filed his amended answer and cross-complaint in equity under Section 390 of the Code. He set up the contract of May 1, 1920, and alleged that he went into possession of the property on the date of the execution of the contract and paid taxes and assessments levied thereon to the amount of $603. He then pleaded the making of the promissory notes mentioned in plaintiff's complaint; following this with a statement of the dates of payment and the amounts paid by himself on these notes. He further alleged his own breach of the terms of the contract of May 1, 1920, which occurred on December 31st of that year, when he defaulted in the payment of the first promissory note in the principal sum of $2,600. The answer and cross-complaint then proceeded on the theory that there had been some depreciation in the reasonable value of the property, which was the subject of the contract, between the date on which the contract was executed, to wit, May 1, 1920, and the date of the breach on December 31st of that year.

In this connection the defendant alleged that on the date of the making of the contract the lands were of the reasonable fair value of $26,000 and that on the date of the breach, to wit, December 31, 1920, they were of the value of $24,300; that as a result of this depreciation the interveners, Edna E. Reynolds and J. E. Reynolds, have been damaged in the sum of $1,700, and no more. He further alleged that because he had paid, under the contract, the total sum of $4,803, Mrs. Reynolds and her husband had received from them the sum of $3,103 over and above any damage resulting to or sustained by them as a consequence of the default and breach of the defendant Blokland.

The answer further alleged that the notes were negotiated after maturity and with notice of the defendants' defense thereto. Blokland further set up in his answer that to permit Mr. and Mrs. Reynolds to retain the sum of $3,103 would be unjust and inequitable; that Blokland was willing to do equity in the matter; that his default and breach of the contract were not the result of any unconscionable or inequitable conduct on his part, but were occasioned by his honest inability to carry out and perform the terms of his contract; that he was ready, able and willing to surrender possession of the premises; that the legal title to the lands was still in Mrs. Reynolds, and that J. E. Reynolds and Edna E. Reynolds were necessary and proper parties to a full and complete determination of the matters involved in this suit and should be required to appear in the equity side of the cause, and asked that they be brought in as parties to the suit; that the action at law be enjoined and the case proceed in equity; that the notes and the alleged debt evidenced thereby be canceled and

that Blokland have a judgment and decree against Edna and J. E. Reynolds in the sum of $3,103 and against Lea for his costs and disbursements and for equitable relief.

An order was entered by the trial court transferring the case to the equity side of the court, directing that Edna Reynolds and J. E. Reynolds be required to appear in the suit. Thereafter Mr. and Mrs. Reynolds appeared and moved the court for an order requiring Mary A. Blokland to be made a party, whereupon she appeared.

The interveners, J. E. and Edna Reynolds, filed their further and separate answer and defense to the Blokland's cross-complaint and as a counterclaim asked for judgment against the defendants Andrew Blokland and Mary A. Blokland for the amount due on the contract, not including the notes, and for attorney's fees.

The Bloklands demurred to the affirmative allegations and counterclaim in the answer of the interveners which was overruled by the court. The case proceeded to trial upon the issues as an equity suit resulting in a judgment in favor of plaintiff A. H. Lea for the amount of the notes and reasonable attorneys' fees, and in favor of the interveners Edna E. Reynolds and J. E. Reynolds for $10,098.33, with interest.          AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. Blaine Hallock.*

For respondent there was a brief over the name of *Messrs. Cochran & Eberhard,* with an oral argument by *Mr. George T. Cochran.*

BEAN, J.—The defendants Blokland submit in their brief the following:

"When a vendee of lands under a contract reserving title in the vendor, and providing for periodic instalment payments of the purchase price, in good faith breaches that contract, he is entitled to the equitable doctrine of unjust enrichment by which the vendor is precluded from recovering more than the actual damages sustained by him as a result of the vendee's breach." Citing among other authorities, *Prichard* v. *Mulhall,* 127 Iowa, 545 (103 N. W. 774, 775, 4 Ann. Cas. 789); *Mitchell* v. *Hughes,* 80 Or. 574, 582, 583 (157 Pac. 965); *Potter Realty Co.* v. *Derby,* 75 Or. 573 (147 Pac. 548); 3 Williston on Contracts, pp. 2452, 2484, 2628, 2633, 1515.

It is conceded that the interveners have complied with all the terms of the contract for the sale of the real property to be performed on their part, and that the Bloklands have breached their contract by their failure to make the payments agreed. Upon these premises the Bloklands seek to annul or rescind the contract.

1. It needs no argument to the proposition that a party cannot take advantage of his own breach of a contract: 13 C. J., § 632, p. 607. The default of a party desiring to rescind or annul a contract is not a ground for such rescission, as found in any of the established rules governing the rights of a party to rescind. It is stated in 5 Pomeroy's Equity Jurisprudence, Section 2169, thus:

"It is well settled, with scarcely any dissent, that specific performance is granted in favor of a vendor of land as freely as in favor of a vendee, though the relief actually obtained by him is usually only a recovery of money—the purchase price."

2, 3. The defendants Blokland filed in the law action an equitable answer for the cancellation of the contract of sale. They caused the Reynolds to be brought in as parties as having some rights under the contract. Therefore, the interveners, the Reynolds, could counterclaim for the amount due them under the contract, and the Bloklands having failed to substantiate their equitable defense, equity having assumed jurisdiction in the cause, will retain it and determine all the issues where there are no issues at law to be tried: *Hagman* v. *Webber,* 117 Or. 350, 356 (243 Pac. 91, 244 Pac. 83).

In *Mitchell* v. *Hughes,* 80 Or. 574 (157 Pac. 965), the case relied upon by the Bloklands, plaintiff brought suit to recover back the payments made by her upon the land and to cancel the judgment obtained by defendants against her for the balance due upon a note given for the accrued interest upon the original purchase price. The trial court found for defendant and this court affirmed the judgment. In that case it was stipulated that if the vendee should fail to perform the contract and make the payments as agreed, in that event the vendors, or either of them, might themselves declare the contract canceled and any and all rights of the vendee should cease. In the event that the vendors should declare the contract canceled, all moneys paid to the vendors should be forfeited as rental and liquidated damages. Upon default of the vendee the vendors notified the vendee that the contract was terminated. The facts in the Mitchell-Hughes case differ from those in the case at bar and the case does not support the contention of the Bloklands. Bloklands, the vendees, can only rescind or cancel the contract of sale on account of some default of the vendors: *Ontario Advancement Co.* v. *Stevens,* 113

Or. 564 (231 Pac. 127); *Anderson* v. *Hurlbert,* 109 Or. 284 (219 Pac. 1092); *White* v. *Oregon Realty Exchange,* 114 Or. 636 (236 Pac. 269).

4. Where parties are competent to contract with each other neither party can be relieved from his agreement for the reason that he did not use good business judgment, or that the contract has not been as profitable as expected, in the absence of fraud, undue influence, duress or mistake in making the agreement: 13 C. J., § 651, p. 610; *Poe* v. *Urley,* 233 Ill. 56 (84 N. E. 46).

5, 6. It is competent and proper for parties to an executory contract for the sale and purchase of land to stipulate as to the damages in case of the failure of one of the parties to comply with the contract. A clear stipulation for a forfeiture will be enforced where not contrary to public policy: 13 C. J., § 642.

The contract in question provides that time is of the essence, and also provides, as shown above, that if the Bloklands should fail to make the stipulated payments, then the contract should "at the option of either of the parties of the first part (the Reynolds) be null and void." The contract which was deliberately made, and is unquestioned, did not give the purchasers the privilege of terminating the same. Herein the contract differs from the one considered in the case of *Potter Realty Co.* v. *Derby,* 75 Or. 566, 573 (147 Pac. 548), relied upon by defendants. In the latter case, the contract, which was construed to mean what its language implied, provided that in case the vendee should fail to make the agreed payments properly or violate the contract—

"then and in any such case, all payments which shall have been made by the party of the second part (purchaser) hereunder shall be absolutely and forever forfeited to the said party of the first part, and this

contract shall be null and void as to both parties hereto without notice, * * ''

It was there held that the parties having agreed upon their own remedy for a breach of the contract that remedy was exclusive. The opinion in that case has become the law of this state, for the guide of parties making such contracts, and for this court in construing them. In *Maffit* v. *Oregon & C. R. Co.,* 46 Or. 443, 452 (80 Pac. 489), where a contract for the sale of land stipulated that if the vendee failed to make the payments as agreed, then the "contract so far as it may bind the first party, shall become utterly null and void" and the seller had the right upon default of the purchaser to enter the land and retain all payments made under the contract. It was said by Mr. Justice WOLVERTON in that case, as shown at page 452 of the Report:

"These stipulations were inserted wholly and solely for the benefit of the vendor. They could not serve the purchasers in any way, as the latter would be precluded from taking the least advantage of their own default. Being for the benefit of the vendor, it might, if it so desired, waive their strict and literal observance on the part of the purchasers, and this it could do in advance of the time of agreed performance. So it could, if it saw fit to, forego a forfeiture already incurred, and thereafter accept performance, and itself perform as if no default had taken place. The matter, therefore, of requiring exact performance on the part of the purchasers, lies wholly within the option or election of the vendor: *Danna* v. *St. Paul Invest. Co.,* 42 Minn. 194 (44 N. W. 55); *Chambers* v. *Anderson,* 51 Kan. 385 (32 Pac. 1098); *Cartwright* v. *Gardner,* 5 Cush. (Mass.) 273, 281; *Manning* v. *Brown,* 10 Me. 49; *Mason* v. *Caldwell,* 5 Gilm. (Tenn.) 196 (48 Am. Dec. 330); *Church* v. *Ayres,* 5 Cow. (N. Y.) 272; *Wilcoxson* v. *Stitt,* 65 Cal. 596 (4 Pac. 629, 52 Am. Rep. 310)."

In *Anderson* v. *Hurlbert,* 109 Or. 284 (219 Pac. 1092), the following syllabi show the ruling of this court. They read thus:

"A purchaser of land, having made part payments on the contract, is not entitled to a division of the property or some settlement by the vendor, whereby the purchaser shall obtain benefit of payments without completing the payments; thus involving the making of a new contract."

"A purchaser, for years in default in making payments under a contract, providing that on her default for thirty days the contract should at vendor's option become null and void, and all rights of purchaser thereunder cease, without right to return of payments made, held to get all she was entitled to by decree providing that she might in a limited time make the contract payments and receive a deed."

"There can be no rescission by purchaser and recovery of payments made, where the vendors are able and willing to perform the contract on their part within the time limited by it."

The case of *Hogan* v. *Kyle,* 7 Wash. 595, 597 (35 Pac. 399, 38 Am. St. Rep. 910), was a case where a contract for the sale of land provided for the cash payment of one third of the purchase price and the balance in two equal installments, time being the essence of the contract. The action was to recover a money judgment for the amount of the two deferred payments. It was instituted more than two years after the maturity of the last installment. The complaint alleged the making of the contract, the failure to pay, the ownership of the property and the tender of a good and sufficient deed prior to the commencement of the action. A demurrer to the complaint being overruled by the lower court, the defendant answered alleging possession of the land in plaintiff and denying his power to give title and

122 Or.—16

alleged that plaintiff had never demanded of defendant the contract price of the land at any time prior to the date of the commencement of the action and never tendered to defendant any deed or conveyance until that date, and never conveyed the premises. The appellate court reversed the judgment for the reason that under its terms the respondent would recover the full purchase price and be allowed to retain the land represented by the purchase price. That they were dependent obligations upon which the plaintiff was suing. The court states at page 597:

"When the first instalment became due, he (the plaintiff) could have recovered the amount then due as upon an independent contract, but having elected to wait until the last instalment became due, and upon the payment of which defendant would be entitled to a deed, the obligations become dependent * * . It is not enough that the deed was tendered at any particular time, but the tender must be kept good so that it may be taken into consideration in the entry of the judgment."

In 3 Williston on Contracts, Section 1399, page 2486, it reads thus:

"Under the rule generally prevailing in the United States, * * and the only rule defensible on principle, allowing the purchaser the difference between so much of the contract price as is unpaid and the market price of the land, is applied in every case where the vendor breaks his contract without legal excuse." Citing among other cases: *Doty's Adm.* v. *Doty's Guardian,* 118 Ky. 204 (80 S. W. 803, 4 Ann. Cas. 1064, 2 L. R. A. (N. S.) 713).

Mr. Blokland testified that the value of the land at the time of the contract was $26,000 and at the time of the trial his testimony indicated it was worth not less than $24,000. The Bloklands have shown

no equitable or legal reason why the contract should not be enforced. The Reynolds simply ask that the Bloklands carry out their contract.

There are some decisions holding that the buyer, though in default, may recover the installments which he has paid, less such an amount as will make the seller whole, but as said in 2 Williston on Contracts, Section 791:

"Nevertheless the great majority of American decisions deny the buyer relief. And it may be said that this is no more than the nece:isary result of default by a party who has previously partly performed his contract. Frequently there is an express provision for forfeiture."

We are inclined to believe that the seeming conflict in the authorities is largely due to the variant facts of the different cases.

In the case of *Pritchard* v. *Mulhall*, 127 Iowa, 545 (103 N. W. 774, 4 Ann. Cas. 789), it was held in substance, that on breach by a vendee of an executory contract for the sale of land, a recovery of the contract price in a court of law could only be on a tender of a proper deed of conveyance and the production of such deed in court for the use of the vendee. There the payments for the land were all due under the contract. The vendor brought action for the purchase price and tendered to the defendant a warranty deed but failed to produce the same in court. The title to and possession of the land had at all times been in the vendor or his grantor. It was there said at page 775 of 103 N. W.:

"It goes without saying that appellee cannot compel payment of the full contract price and keep the property for which that price was to be paid."

The instant case does not present circumstances like the case last referred to. The time for the ten-

der of a deed by the Reynolds, the vendors, had not arrived.

7. When the contract in question was made for the sale of the land the vendors were, in equity, immediately deemed trustees for the vendee of the real estate, and the vendee was deemed trustee for the vendors of the purchase money: *Walker* v. *Goldsmith*, 14 Or. 125, 137 (12 Pac. 537); 2 Story's Equity Juris., § 1212; *Sheehan* v. *McKinstry*, 105 Or. 473, 483 (210 Pac. 167, 34 A. L. R. 1315, note, L. R. A. 1916C, 461, 478).

8. The contract in question provides that time is of its essence, and that no payments can be recovered by the vendee. Therefore, the Bloklands cannot, by counterclaim, recover anything from the Reynolds: *Cornely* v. *Campbell*, 95 Or. 345 (186 Pac. 563, 187 Pac. 1103); *Anderson* v. *Morse*, 110 Or. 39 (222 Pac. 1083).

9, 10. Where a contract of sale is executory like the one in question, and the promises to pay the purchase money, except the last installment, are independent of the vendor's agreement to convey, an action will lie for the unpaid and overdue installments of the purchase price: 27 R. C. L., § 365, p. 611; *Loud* v. *Pomona Land .etc. Co.*, 153 U. S. 564 (38 L. Ed. 822, 14 Sup. Ct. Rep. 928). Under the provision of such a contract of sale, where promissory notes are given for the purchase price they are independent promises: *Walker* v. *Hewitt*, 109 Or. 366, 374 (220 Pac. 147, 35 A. L. R. 100).

11. Where payments are to be made in installments, and conveyance is not to be made until after full payments, all, except the last installment, are independent promises: 27 R. C. L., § 172, p. 460; *Sheehan* v. *McKinstry, supra; Rose* v. *Rundall*, 8

Wash. 422 (150 Pac. 614; *North Stockton Town Lot Co.* v. *Fischer,* 138 Cal. 100 (70 Pac. 1082, 71 Pac. 438); *Glock* v. *Howard & Wilson Co.,* 123 Cal. 1 (55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199).

The defendants Bloklands caused the matters involved in the action at law to be transferred to the equity side of the court, thereby selecting the forum in which the matter should be tried. The case was tried as a suit in equity and the issues are all disposed of. There is much said in the brief of appellants as to the equity jurisdiction but equity having assumed jurisdiction at the instigation of the appellants, it would be idle to say that equity did not have the power to grant full and complete relief. In other words, when the equity suit was determined, and the court correctly found that the Bloklands were not entitled to equitable relief, there were no issues remaining to be tried in an action at law. There was no other defense interposed by the Bloklands than that claimed as an equitable defense, and the trial court properly entered judgment for the installments due under the contract.

Where parties have solemnly entered into a written contract for the sale of land or personal property and the vendee has agreed to make payments therefor in installments at stated times, where time is of the essence of the contract, and the vendor has faithfully performed all the conditions of the contract to be performed on his part, and is ready, able and willing to further perform the conditions of the contract when the time is ripe for such performance, and the vendee is in default in making the stipulated payments, to hold that the vendor cannot collect the installments when due would be to unsettle business and practically nullify many contracts of sale: *Bell*

v. *Spain,* 110 Or. 114, 129 (222 Pac. 322, 223 Pac. 235).

Having carefully examined the record, we find that the decree rendered by the Circuit Court was correct and the same is affirmed.

AFFIRMED.   REHEARING DENIED.