Submitted on briefs December 13, 1934; reversed
April 16, 1935

## THORP *v.* RUTHERFORD

(43 P. (2d) 907)

*G. C.* and *A. C. Fulton,* of Astoria, for appellant.
*Glen R. Metsker,* of St. Helens, for respondent.

CAMPBELL, C. J. On January 10, 1928, Frank M. Thorp, since deceased, contracted in writing to sell to L. R. Rutherford, a certain parcel of real estate in Columbia county, Oregon, at the price of $2,500 which L. R. Rutherford agreed to pay. The terms of payment were $100 cash at the time of the execution of the contract and the balance on or before five years from date with interest at the rate of 6 percent per annum, the interest to be paid monthly, any part of the principal payable any interest pay day; vendee to pay all taxes; keep all buildings on the premises insured; time was made the essence. If all conditions be performed by the

vendee which he obligated himself to perform, the vendor

"* * * shall give unto the second party (the vendee) his heirs or assigns, upon request at St. Helens, Oregon, and upon the surrender of this agreement, an abstract showing marketable title continued as to the first party and good and sufficient deed of conveyance conveying said premises in fee simple, free and clear of encumbrances excepting, however, the above mentioned taxes and assessments and all liens and encumbrances created by the second party or his assigns."

The vendee also agreed to pay one-half of the cost of the abstract in excess of $20.

The contract also provided that in case of default on the part of the vendee,

"* * * to make the payments aforesaid or any of them, punctually and on the strict terms, and at the times above specified, or fail to keep any of the other terms and conditions of this agreement time of payment and strict performance being declared to be the essence of this agreement, then the first party shall have the right to declare this agreement null and void, and in such case all the right and interest hereby created or then existing in favor of the said party of the second part derived under this agreement, shall utterly cease and determine and the premises aforesaid shall revert and revest in the first party without any declaration or forfeiture or act of reentry, or without any further act by first party to be performed and without any right of the second party of reclamation or compensation for money paid or for improvements made as absolutely, fully and perfectly as if this agreement had never been made.

And in case suit or action is instituted to foreclose this contract or to enforce any of the provisions thereof, second party agrees to pay such sum as the court may adjudge reasonable for attorney's fees in said suit or action."

The vendor retained possession, or at least there is no showing that the vendee went into possession.

On January 14, 1928, L. R. Rutherford sold and assigned an undivided one-half interest in said contract to P. M. Bewley.

On June 13, 1932, F. M. Thorp, the vendor, died testate and on January 18, 1933, plaintiff herein was duly appointed and thereupon qualified as sole executor of the last will and testament of decedent.

Nothing more than the down payment of $100 was paid on the purchase price and interest was paid to July 10, 1932. Thereafter, defendants failed to make further payments and plaintiff as executor instituted this action to recover the amount due on the contract and tendered to defendant an executor's deed conveying the said real estate to defendant in fee simple with warranty against encumbrances and tendered said deed into court for the benefit of defendant and asked for judgment for the balance of the purchase price.

Defendant filed an answer to the complaint which consisted of denials and admissions not material here and then by way of affirmative matter set up his further defense, alleging in substance the execution of the contract set out in the complaint; the assignment of an undivided one-half interest to P. M. Bewley; that the vendor was duly notified of said assignment and consented thereto and acquiesced therein and accepted payments of interest on the contract from said P. M. Bewley; that plaintiff breached the conditions of the contract by refusing to furnish an abstract showing marketable title; by refusing to make a deed conveying said premises to defendant and P. M. Bewley as tenants in common; that because plaintiff failed to have an executor appointed after the death of the vendor until

January, 1933, there was no one to whom defendant could pay the interest; that upon defendant being notified of plaintiff's refusal to execute a deed of conveyance to defendant and his assignee, defendant thereupon rescinded said contract and so notified plaintiff and demanded return of the money that had been paid thereon, to wit: $748, and prayed for judgment for that amount.

To this answer, plaintiff filed a reply in which he admits the death of F. M. Thorp, leaving plaintiff and Amy Thorp as sole heirs, the appointment of plaintiff as executor; that payment of certain installments of interest by P. M. Bewley to plaintiff's decedent, but denies that there was any understanding or agreement or knowledge on the part of the decedent of Mr. Bewley's interest in said contract. Plaintiff further alleges that said F. M. Thorp, during his lifetime, and plaintiff as his executor, and the sole heirs at law of said F. M. Thorp, were at all times and are now ready, willing and able upon request and upon payment of the purchase price to deed said real property, as in said contract described, to any person or persons whatsoever whom defendant might designate; that the sole heirs at law of plaintiff's decedent are personally known to defendant and have been so known for many years.

On these issues the case was tried to a jury which returned a verdict in favor of plaintiff for the sum of $2,400. Judgment was entered thereon and defendant appeals.

At the beginning of the trial, defendant made a general objection to the introduction of any testimony for the reason that the complaint did not state facts sufficient to constitute a cause of action. The objection

was overruled and the first assignment of error is based thereon.

■ Defendant contends that the contract limits the right of plaintiff to the remedy provided therein. In support of this proposition defendant cites *Mitchell v. Hughes,* 80 Or. 574 (157 P. 965). The decision on this point in that case is based on *Potter Realty Co. v. Derby,* 75 Or. 563 (147 P. 548), wherein it was said: "The parties having agreed upon their own remedy for the breach of the contract, that remedy is exclusive." However, the conditions in the contract under consideration in that case were that in the event the vendee failed to comply with all conditions on his part to be performed,

"* * * then and in any such case all payments which shall have been made by the party of the second part hereunder shall be absolutely and forever forfeited to the said party of the first part and this contract shall be null and void as to both parties without notice, * * *."

In the contract under consideration in the instant case, the vendor is not so limited. He may exercise an option. He is not obliged to declare the contract at an end and forfeit all payments made thereon and resume complete ownership.

It is further contended that if the contract does not limit the remedy of the vendor nevertheless the law limits his right to (a) a suit in equity for specific performance, or (b) to a foreclosure of the contract, or (c) an action at law for damages for breach of the contract.

"Where a valid executory contract for the purchase and sale of real property is broken by the vendee's failure to pay the purchase money as stipulated in the contract, the vendor has in equity a choice of remedies. He may tender a deed and sue for specific performance

of the contract, or he may sue for strict foreclosure of the contract." *Marquardt v. Fisher,* 135 Or. 256 (295 P. 499, 77 A. L. R. 265).

Defendant contends that plaintiff has not sought relief in equity, but in law, and, therefore, his only action should be one for damages for breach of the contract. The authorities would seem to be in hopeless conflict as to whether a vendor, under such circumstances as exist in the instant case, may bring an action at law to recover the purchase price. This conflict arises, to a great extent, from the fact that no two states draw the same distinction between actions at law and suits in equity. Oregon is one of the states where the line of demarcation is quite sharply drawn. Text writers and courts sometimes use the word "suit" and "action" as synonymous.

"The vendor has his option to sue for the purchase price on default of the purchaser. He need not rescind the contract. Such an action will prevent rescission. The action is in the nature of an action for specific performance." Thompson on Real Property, 1929 Sup. 1262.

It appears that where an independent instrument, such as a negotiable note, is given for the purchase price at the same time as the execution of the contract the vendor or his assignee may bring an action to collect the purchase price, even without tendering a deed, if the contract provides that the vendee shall first pay the purchase price and the vendor thereafter make a deed: *Walker v. Hewitt,* 109 Or. 366 (220 P. 147, 35 A. L. R. 100); *Lee v. Blockland,* 122 Or. 230 (257 P. 801); *Loud v. Pomona Land and Water Co.,* 153 U. S. 564 (38 L. Ed. 822, 14 S. Ct. 928).

On the other hand, the weight of authority is that a vendor's only remedy in law is for breach of the con-

tract, under such circumstances and facts as are present in the instant case.

"The vendor may maintain an action for damages in case of the purchaser's wrongful refusal to complete the contract. If the contract has been executed by a conveyance he may maintain an action at law for the unpaid purchase money. * * * According to the weight of the authorities if the contract is executory and the agreement to convey and to pay the purchase money are dependent, the vendor cannot maintain an action for the purchase money, after a tender of the conveyance, but can only recover at law damages for breach of the contract. This is the rule laid down in the leading English case of Laird v. Price (7 Mees. & W. 474) decided in 1841, and the reason given is that the title to land can only pass by deed and a recovery of the purchase money will leave the title in the vendor. According to the great weight of authority the remedy in equity by way of specific performance is mutual, and therefore the vendor may sue for specific performance, though he also has a remedy by an action at law to recover the purchase money, and a fortiori this is true where the rule prevails that in an action at law the vendor is restricted to a recovery of damages, the measure of which is the difference between the entire purchase money." 27 R. C. L. 612.

"Most of the cases which appear to hold that a vendor, while still possessed of the title and the property, may maintain an action to recover the purchase price, seem to proceed upon the theory that, although the action is in form at law, it still invokes the equity powers of the court to such a degree as to enable it to make such orders and direction in respect to the enforcement of the judgment as will protect the rights of all concerned. *Rindge v. Baker,* 57 N. Y. 209 (15 Am. Rep. 475); *Shelley v. Mickelson,* 5 N. D. 210). As is well observed by Mr. Sutherland (Volume 2, Section 570), 'It is evident that these are irregular expedients to give the judgment at law the effect of specific performance,' an expedient which is of doubtful propriety

in jurisdictions where, as in this State, the distinction between actions at law and in equity is still preserved.'' *Prichard v. Mulhall,* 127 Iowa 545 (103 N. W. 774, 4 Ann. Cas. 789, and see note.)

''A vendor of land is not entitled to recover the purchase price from his vendee in an ordinary action at law. He can recover only the damages he has sustained by reason of the breach of the contract obligation. [Citing many cases.] If the complaint be regarded as an action at law merely, the demurrer was properly sustained.

2. Counsel for plaintiff, however, insists that it sets forth a good cause of action for specific performance. That the relief sought was a money judgment is, of course, immaterial. It is elementary that a demurrer will not lie to a mere prayer for relief. The question is whether the facts stated entitle plaintiff to equitable relief. It is also true that here plaintiff has not alleged either the conclusion, or the facts from which a conclusion could be drawn, that he had not an adequate remedy at law. This leads to the consideration of the real controversy.  *  *  *  The vendee, essentially as a matter of course, is entitled to specific performance. The vendor should be allowed similar relief. It has been demonstrated that 'the rule as to mutuality of remedy is obscure in principle and in extent artificial, and difficult to understand and to remember.' [Citing authorities]  *  *  *  the general rule, and the rule in this state, however, is that 'where parties make a mutual executory contract for the sale of real estate, and the vendor covenants on his part to convey the land, and in consideration thereof the vendee promises to pay the purchase price, and there is nothing in the contract which makes it invalid or objectionable in its nature nor in the circumstances connected with it, equity regards the vendee as the beneficial owner of the premises, even though he has not paid the purchase price;'  *  *  *'' Freeman v. Paulson, 107 Minn. 64.

''On the one hand it is said that the vendor, by making a tender, has performed his contract so far as it lies in his power; that his right is complete to the

performance of the contract by the vendee and that this performance is the payment of the purchase money. But on the other side it is replied with great force that the recovery cannot pass the fee in the land; that the legal seisin still remains as at first; that the vendor has not parted with his property; that if the land has not fallen in price he has lost nothing; that the common law gives damages for none but actual loss; and it is insisted that the true measure of damages in such a case is the difference between the stipulated price at the time of the breach or perhaps at the time of the trial." Sedgwick on Damages, 191, 192. Quoted with approval in *Garrard v. Dollar,* 49 N. C. 175 (67 Am. Dec. 271), and see note. Also see *Hogan v. Kyle,* 7 Wash. 595 (35 P. 399, 38 Am. St. Rep. 910); *Goodwine v. Morey,* 111 Ind. 68 (12 N. E. 82).

Plaintiff relies on *Lea v. Blokland,* 122 Or. 230 (257 P. 801), a case tried on the equity side of the court, so we must consider the principles therein announced as applying to equitable proceedings. That case is not opposed to the weight of authority.

The consensus of opinion would seem to be that where the covenant to pay and the covenant to convey are independent then an action at law may be instituted for the purchase money, but where the covenants are dependent, or to be concurrently performed, then the weight of authority seems to be that no action at law will lie for the purchase money; that the vendor's remedy is by suit for specific performance, that is if he wishes to recover the purchase money.

In the instant case the contract provides that the vendee shall pay a certain sum and that the vendor shall make conveyance and furnish an abstract showing marketable title. On the trial plaintiff contended that defendant waived the necessity of the tender of a "certified abstract to date" by refusing to pay the one-half of the cost of said abstract over $20, in ad-

vance. The contract provides that the party of the first part,

"* * * shall give unto the second party his heirs and assigns, upon request, at St. Helens, Oregon, and upon the surrender of this agreement an abstract showing marketable title continued as to first party and a good and sufficient deed conveyance conveying said premises in fee simple * * *".

It was not incumbent upon the vendee to pay the cost of said abstract in advance. The plain meaning of the above provision is that defendant would only be required to pay his part of the cost of such abstract when it was furnished showing a marketable title. It was not the duty of defendant to pay for discovering whether or not plaintiff had a marketable title.

■ It is also contended by plaintiff, although there is no pleading to that effect, that defendant waived the abstract of title by accepting title insurance. However, when vendor seeks specific performance, whatever the form of proceeding adopted, where the covenants are mutual and dependent it is necessary for him to allege and prove that he has complied with or is ready, willing and able to comply with all the conditions imposed upon him, or that said conditions were waived by the vendee.

■■ The cause was tried in the lower court in the form of an action at law. The allegations in the complaint are sufficient to support a suit in equity for specific performance, and the cause may be disposed of as such. If the plaintiff establishes the allegations of his complaint, that he has performed all the conditions of the contract on his part to be performed, then he would be entitled to the aid of a court of equity, notwithstanding that he brought his action on the wrong side of the court. "* * * No cause shall be dismissed for having been brought on the wrong side of the court.

* * *'': Oregon Code 1930, § 6-102; *Oldenburg v. Clagget,* 142 Or. 238 (20 P. (2d) 234); *Weith v. Klein,* 136 Or. 201 (298 P. 902); *Spencer v. Wolff,* 119 Or. 237 (243 P. 248); *Cole v. Canadian, etc.,* 115 Or. 456 (239 P. 98); *McCann v. Oregon, etc.,* 105 Or. 213 (209 P. 483); *Kroschel v. Martineau Hotels,* 142 Or. 31 (18 P. (2d) 818). There can be no doubt that if the vendee should tender the purchase price he could demand and obtain specific performance on the part of the plaintiff. The contract being mutual, the right to its enforcement is mutual: *Freeman v. Paulson,* supra.

When plaintiff came to the conclusion that he desired the money more than he did the property, and found himself unable to arrive at a satisfactory settlement with the vendee, he employed counsel. Thereafter, the negotiations were carried on largely by correspondence. The letters to and fro were couched in words of the utmost politeness and were such as would do credit to the diplomats of nations when they were about to declare war on each other. The recipient of a letter did not always interpret it in the sense that the writer intended.

■ It is incumbent on a vendor, if he wishes specific performance, to tender performance on his part. In the instant case, the vendor contracted not only with the vendee but also with his "heirs and assigns", and when plaintiff had notice that a one-half interest in the subject of the contract was assigned, it was necessary for him to comply with that part of the contract. The evidence conclusively shows that the plaintiff had notice of such an assignment long before the commencement of this suit. Plaintiff offered in evidence a deed, made jointly by the vendor, since deceased, plaintiff herein as an individual, and Amy Thorp, his sister, conveying this identical property to L. R. Rutherford

and Mary A. Rutherford, his wife, and P. M. Bewley and Elizabeth Bewley, his wife. This deed was signed by the grantors on November 9, 1928, but was never delivered, nor was delivery tendered during the life of the vendor. The deed plaintiff tendered into court with his complaint ignored the assignment and purports to convey only to the vendee, L. R. Rutherford.

The assignment of a one-half interest in the contract bears the date of January 14, 1928. Defendant Rutherford testified that within a day or two of that date a duplicate of the assignment was delivered to the vendor. This testimony was corroborated by Mr. Bewley. The letter of plaintiff's counsel dated March 8, 1933, touching on this subject reads:

"I note what you say regarding an assignment of a half interest in this contract by you to Phil Bewley. Mr. Thorp, however, was no party in your agreement with Mr. Bewley. His contract, which I have before me, is with you only and I can only deal, therefore, with you. The contract obligates the executor to execute a deed to you and obligates you to pay the purchase price to him. Whatever dealings in the matter you had with someone else will have to be ironed out between you and him."

This letter does not show a willingness to comply with the terms of the contract to convey to the vendee, "his heirs or assigns".

After defendant, by his letter of March 30, 1933, attempted to rescind the contract, then plaintiff began to talk about an abstract. His counsel wrote under date of April 1, 1933:

"In your letter of March 6th you directed me to see Phil Bewley regarding the matter of this abstract. Mr. Bewley came in a day or two subsequent to the date of your letter and advised me that an abstract would not be necessary and asked me not go to that expense inas-

much as you had title insurance. He reiterated this to me again yesterday. Notwithstanding this I am today ordering an abstract from the Columbia County Abstract Company contingent upon your paying one-half of the cost over and above the sum of $20.00. I believe that one week from this date would be a reasonable time for you to inform the abstract company whether or not you intend to pay your part of the cost of this abstract.''

The letter of defendant referred to by counsel for plaintiff acknowledged receipt of an earlier letter from counsel, and after advising counsel that the writer, L. R. Rutherford, had been ill and confined to his bed for two weeks, and did not know when he would get out, continued:

''In the meantime you can see Phil Bewley. He was assigned a one-half interest and paid half of all payments made until I sold all the business to him in December 1929, when I became ill and had to quit office work. After that he made all the payments, charging one half to me, until it came to the time neither of us could continue. Will see you when I am able to do so.''

There was nothing in the letter directing plaintiff's counsel to see Mr. Bewley about an abstract and nothing that would indicate that Mr. Bewley had authority to waive any of the provisions of the contract.

■ Plaintiff did not tender an abstract showing a marketable title. On the trial plaintiff introduced evidence tending to show that he had good title to convey by trying to prove ownership in the vendor by adverse possession. The evidence introduced falls far short of showing such ownership. Such an attempt would tend to show that plaintiff could not furnish an abstract showing a ''marketable title''. Until ownership by adverse possession is established by suit or action, there can be no abstract showing marketable title in

the adverse claimant. The deed of conveyance made by the executor and tendered into court only shows that as such executor he was authorized to make such conveyance. Such a conveyance would only convey whatever interest the decedent had in the property at the time of his death.

"A conveyance executed by an executor or administrator shall set forth the date of the order directing the sale, and the book, number thereof, and page containing the same, and the date of the order confirming the sale and directing the conveyance, and the book, number thereof, and page containing the same, and the title of the court making such orders, and shall operate to convey all the estate, right, and interest of the testator or intestate in the premises at the time of his death." Oregon Code 1930, § 11-615.

Such a deed would not comply with the conditions of the contract, unless plaintiff would also establish that he had good title and right to convey. This plaintiff failed to do.

■ Defendant, in his further answer, asks for a return of the money paid. Before the court would grant him such relief, it would be necessary for him to establish that he complied with all the conditions on his part to be performed. This he failed to do. He did not pay the taxes accrued nor did he make the payments promptly and in accordance with the "strict terms and at the times specified."

We have discussed many of the points raised by counsel on both sides so as to avoid having the cause come back on the same propositions of law.

The judgment will be reversed and the cause remanded with instructions to the court to hear and determine it as a suit in equity. Neither party will recover costs herein.

It is so ordered.