Argued January 27; affirmed February 7, 1933

# KROSCHEL *v.* MARTINEAU HOTELS, Inc.

### (18 P. (2d) 818)

*Porter J. Neff,* of Medford, for appellant.

*A. C. Hough,* of Grants Pass, for respondent.

BAILEY, J. This proceeding was instituted and first tried as an action at law. After the court had announced its decision in favor of the plaintiff, the

defendant sought and obtained permission to file a second amended answer, setting forth an equitable defense. From a decree in favor of the defendant, plaintiff appeals.

Plaintiff contends that the lower court erred: (1) in permitting defendant to file a second amended answer setting forth an equitable defense after the case had been tried as an action at law after a decision had been announced favorable to the plaintiff; and (2) in entering a decree reforming the written contract which was the basis of plaintiff's action and enjoining plaintiff from further prosecution of the action at law.

The complaint alleges that the Gold Seal Creamery, a corporation, plaintiff's assignor, in January, 1930, entered into a written contract with defendant, whereby the Gold Seal Creamery sold, delivered to and installed for the defendant certain electric refrigeration equipment at an agreed price; and that the defendant had failed to pay the last four monthly instalments on the purchase price of this equipment. The allegations contained in the complaint were admitted by the defendant in its amended answer, with the exception of the assignment of the claim by the Gold Seal Creamery to the plaintiff.

For its "further and separate answer and cross-complaint" defendant alleged the negotiations between A. J. Martineau, president and general manager of the defendant corporation, S. A. Kroschel, president and manager of the Gold Seal Creamery, and W. E. McClurg, sales manager of the Potter Refrigerator Corporation, concerning the purchase and installation of a refrigerating plant in defendant's hotel at Grants Pass, Oregon. According to these allegations, plaintiff and McClurg came to Grants Pass to interest the

defendant in the purchase of a plant manufactured by the Potter corporation and at that time the defendant explained to Kroschel and McClurg the particular requirements of the hotel in relation to a refrigerating plant. Kroschel and McClurg represented that the plant which they proposed to install would meet defendant's requirements and that the same was warranted against defects in material and workmanship for life and was further specially warranted for "satisfactory operation for a period of two years from date of sale", also that "such service as might be required to insure satisfactory operation" would be furnished free of charge for a period of two years.

Relying upon these representations and warranties, Martineau, on behalf of the defendant corporation, signed a written order presented to him by Kroschel and McClurg for the purchase and installation of the plant, which order was accepted by McClurg as sales manager and Kroschel as salesman, and which contained on the back and as a part thereof the warranties above mentioned. The amended answer further alleges that after signing this order, the plaintiff prepared and sent to defendant the contract which forms the basis of plaintiff's action, and requested defendant to sign the same, and that thereupon the defendant without waiving the warranties and representations that were made and believing that the same were in full force and effect, signed the contract.

According to defendant's pleadings, the plant was installed and from the very first "said refrigerating machine and parts thereof almost continuously failed to work properly or to produce results warranted and represented by the said McClurg and the plaintiff, Kroschel", and for some time the plaintiff at his own

expense "made changes and alterations in and repairs to said refrigeration plant", but "notwithstanding said changes and renewals and attempts to make the said refrigerating plant operate properly and satisfactorily and to manufacture the required amount of ice and preserve the meat and other products necessary for use in Redwoods Hotel, said plant failed at all times to perform the said requirements and during all of said time the said plaintiff, Kroschel, repeatedly assured and warranted to the defendant that he would make said machinery and apparatus properly operate and function". The answer further alleges that defendant, relying upon said promises, paid to plaintiff the instalments due on the contract, with the exception of the last four payments. Damages in excess of plaintiff's claim were specifically pleaded and judgment for the amount thereof was requested in the prayer.

At the trial of the case, after plaintiff proved the assignment of the claim to him by the Gold Seal Creamery, defendant introduced evidence in support of the allegations of its amended answer. This evidence was admitted over the objection of plaintiff that parol evidence was inadmissible to vary the terms of the written contract upon which the action was based. At the close of the testimony the trial judge took the case under advisement and later announced his decision in favor of the plaintiff. Whereupon defendant requested and obtained permission to file a second amended answer, in which it asked that the contract sued upon be reformed by including therein the warranties hereinbefore mentioned.

■ The first question which we are called upon to decide is whether or not the court erred in permitting defendant, after both parties had rested and the court had announced its decision, to file a second amended

answer asking equitable relief by having the contract sued upon reformed so as to include the warranties contained in the original order signed by defendant and accepted by McClurg and the plaintiff herein.

Defendant's testimony on the original hearing supported its contention that defendant had purchased the refrigerating plant upon the representations of plaintiff and McClurg that the plant would meet defendant's requirements in its hotel business, and upon the warranties as to workmanship and service, and that defendant believed that the warranties contained in the order were a part of the contract between the parties.

After the terms had been agreed to, plaintiff was commissioned to have the contract prepared to include the terms agreed upon and to substitute the Gold Seal Creamery in place of the Potter Refrigerator Corporation. The principal object of the defendant in purchasing the refrigerating plant from the Gold Seal Creamery was that it might be assured of the fulfilment of the conditions contained in the warranties. On February 28, 1930, the Gold Seal Creamery sold its interest in the contract to plaintiff.

For a period of some fifteen months after the installation of the plant plaintiff frequently, at the request of defendant, serviced the machinery free of charge, but on April 28, 1931, plaintiff wrote to the defendant:

"Mr. Neff just read to me your letter addressed to him in reply to one from me of April 20th. I want to state in this connection that I have looked after your machines for the past fifteen months and have paid for the man who attended to the servicing of said machines, and, that the machines are in perfect condition and work all right.

"I did not agree to give you indefinite service free of charge; the period of developing defective workmanship has elapsed. Any service calls, which are likely to come up with any piece of equipment, you will be kind enough and call the Electric Wiring Company, of Medford, Oregon, Phone No. 335, who will charge you no more than I have paid them heretofore, and I feel that the calls will not be very expensive to you".

Under section 6-102, Oregon Code 1930, a defendant in an action at law, "entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, * * * may set such matter up by answer, without the necessity of filing a complaint on the equity side of the court". When an equitable defense is interposed, the action at law is stayed until the determination of the issues thus raised. The latter part of this section contains these provisions:

"No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account. Testimony taken before the amendment and relevant to the issue in the law actions shall stand with like effect as if the pleadings had been originally in the amended form".

At the time the trial judge rendered his first decision, he was faced with the alternative of either permitting the defendant to file an amended answer for equitable relief, which the evidence already introduced warranted, or to render judgment for the plaintiff for the amount prayed for in his complaint. To the trial judge is committed broad discretion. He is more than a mere referee between the litigants. The amendment requested by the defendant was supported by, and in accord with, the testimony before the court. In re-

ferring to a somewhat similar matter, the Circuit Court of Appeals for the Fourth Circuit, in the case of *Clarksburg Trust Co. v. Commercial Casualty Insurance Co.*, 40 Fed. (2d) 626, at page 632, said:

"The pleadings in the case, as well as the proofs adduced, therefore, support the right to relief in equity, although neither on the pleadings nor on the proofs is there a right to recover at law. We have a clear case, then, of a suit, which should have been instituted and tried as a suit in equity, instituted and tried as an action at law; and the question which arises is whether we must affirm the judgment at law because plaintiff has misconceived its remedy (notwithstanding that such affirmance under the circumstances here will amount to a final denial of relief), or whether we have the power to transfer the cause to equity and send it back for hearing in accordance with the equitable rights of the parties. We think that we have such power, and that this is clearly a case in which same should be exercised".

The section of our code above referred to was amended in 1917 for the express purpose of permitting amendments either by the plaintiff or the defendant, when entitled to equitable relief, to avoid a miscarriage of justice. The provision that "no cause shall be dismissed for having been brought on the wrong side of the court" applies alike to all parties to a proceeding. A party named as a defendant in an action at law becomes, so far as his demand for equitable relief is concerned, the moving party, and assumes the role of a plaintiff. He has the same right to ask for and be granted permission to file an amended answer where he is mistaken as to whether his defense is legal or equitable, as the plaintiff who mistakenly institutes his action on the wrong side of the court. The latter part of section 6-102, Oregon Code 1930, above set out,

contemplates that amendments may be made by either party to an action after testimony has been introduced, by providing that testimony taken before the amendment and relevant to the issue in the law action shall stand with like effect as if the pleadings had been originally in the amended form.

In the case of *Wright v. Morton,* 125 Or. 563 (267 P. 818), this court, referring to the contention of the defendants that the court should, where the case was tried as an action at law, have retained jurisdiction for the reformation of a contract, said:

''The defendants argue that the court erred when it entered a final judgment against them; they contend that the court should have retained jurisdiction, and should have proceeded to try the allegations of the answer as a cross-bill for the reformation of the contract. This portion of the answer is entitled: 'further and separate answer and defense herein, and as their counter claim herein  *  *  *'. It prays for no equitable relief; it demands that the plaintiff take nothing, and that the defendants have judgment against the plaintiff for $159.17. It is true that a pleading need not be labeled, and a prayer for the wrong relief following a pleading which sets forth facts entitling the pleader to some relief does not operate to deny the proper relief, but the title and the prayer serve a useful purpose if they indicate the pleader's conception of the use to which he expects to put his pleading. In this case the title, the prayer, and the defendants' course at the trial indicated that the defendants were not endeavoring to reform an instrument, but were relying upon a theory of payment. For instance, they proceeded to trial with a jury; they did not endeavor to take answers over the objections under the equity rule and they did not endeavor to amend the pleadings when the court directed the verdict. At no stage of the proceedings in the lower court did they seek to have the answer construed as a plea for reformation of the instrument.

That relief is asked for the first time in this court upon appeal. We can not give it ourselves because the answers were not taken over objection''.

In the case at bar, practically all of defendant's testimony on which the decree was based had been introduced at the time the amendment was made. From the beginning of the trial of the case defendant contended that the contract sued upon did not contain the agreement of the parties.

Referring to the power of the court to permit amendments, this court, in the case of *Talbot v. Garretson,* 31 Or. 256 (49 P. 978), said:

''As illustrating the power of the court, under a statute similar to ours, to allow the pleadings to be amended, the case of Hatch v. Central Bank, 78 N. Y. 487, is instructive. In that case the original complaint alleged, in substance, that plaintiff purchased of defendant what purported to be four United States treasury notes for $1,000, which were counterfeited. Upon issue joined the plaintiff had judgment for the amount paid for the counterfeit notes, with interest; but, after this judgment had been paid and satisfied, the court granted a motion that it be opened, and the satisfaction thereof canceled, and that plaintiff be allowed to serve an amended complaint, adding a count setting forth the purchase of four other similar counterfeited notes, which it was claimed was omitted from the original complaint by mistake, on condition that the plaintiff refund and repay the amount of the judgment which had been paid, and upon compliance with certain other terms and conditions, although the effect of such amendment was to avoid the statute of limitations. The order allowing this amendment was affirmed on appeal, the court, through Mr. Justice Danforth, saying that 'it was going a great way to grant the relief sought, but the application was not without merit, and was one which, under a long series of authorities, the court had power to grant'. Within

this construction of the statute, supported by the authorities cited, the court had power to allow the amendment sought to be made in this case although it would have added an additional ground for relief to that contained in the original complaint''.

See also: *Fiorito v. Clyde Equipment Co.*, 2 Fed. (2d) 807; *Liberty Oil Co. v. Condon Bank*, 260 U. S. 235 (43 S. Ct. 118, 67 L. Ed. 232).

In the case of *Union Central Life Insurance Co. v. Deschutes Valley Loan Co.*, 139 Or. 222 (3 P. (2d) 536, 8 P. (2d) 587), the court, in answering the contention that the filing of a second amended complaint, after an issue of law had been disposed of, changed the cause of action, held:

"It is contended by appellant that the court erred in permitting plaintiff to file its second amended complaint because it changed the cause of action, after an issue of law had been tried by the court. While the second amended complaint transformed the cause from one in equity to one at law, the parties and the subject matter remained the same. The same relief was sought but in a different method.

" '* * * No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account * * *'. Oregon Code 1930, § 6-102; Cole v. Canadian Bank of Commerce, 115 Or. 456 (239 P. 98); Spencer v. Wolff, 119 Or. 237 (243 P. 548); Brakebush v. Aasen, 126 Or. 1. (267 P. 1035) ''.

The allegations contained in the second amended answer, differing from those in the amended answer, were in conformity with the evidence which had previously been introduced, and it was within the discretion of the trial court to permit the defendant so to amend its pleadings as to enable the court to grant equitable relief.

■ The only remaining question to be disposed of is the alleged error of the court in entering a decree reforming the written contract and perpetually enjoining the plaintiff from further prosecution of the action at law.

The contract which plaintiff was instructed to have prepared to embody the agreement of the parties omitted the warranties upon which defendant relied in signing the original order. One of these warranties was against defects in material and workmanship and the other was designated "service warranty" and read as follows:

"On all new refrigerating machines sold by us at retail prices, and installed by us, we warrant satisfactory operation for a period of two years from date of sale and agree to furnish free of charge such service as may be required to insure such satisfactory operation. It is expressly understood, however, that in case of neglect or misuse, or if any machine, or any part of such installation, be repaired, altered, or tampered with, by any one but ourselves, this service warranty shall be voided, and any further service rendered by us shall be paid for at our regular rates".

The evidence in the case is clear and convincing that the defendant purchased the refrigerating equipment in reliance upon the warranties above referred to and that the parties to the agreement understood at the time defendant signed the order for the purchase of the equipment and paid the initial one hundred dollars on the purchase price thereof that the warranties constituted a material part of the agreement between the parties. It was of no value to the defendant to have plaintiff's assignor, the Gold Seal Creamery, act as representative of the Potter corporation for southern Oregon, unless the Gold Seal Creamery was to be bound by, and carry out, these warranties.

Martineau, acting on behalf of defendant, did not, according to his testimony, carefully read the contract prepared by the plaintiff and presented to him for signature, as he understood that it was to contain the terms formerly agreed to and that the warranties were still in force. The contract which was prepared and submitted by plaintiff for Martineau's signature contained this clause: "This agreement constitutes the entire contract and no waivers or modifications shall be valid unless written upon or attached to this contract, and said equipment is accepted without any express or implied warranties unless written hereon at the date of purchase", and it is contended by plaintiff that a party who is able and has full opportunity to read, and is not deterred by any inequitable conduct from reading, the contract which he signs, is not entitled to reformation thereof when the contract is clear and unequivocal in its provisions. In support of this contention the case of *Menefee Lumber Co. v. Gamble,* 119 Or. 224 (242 P. 628), is cited and relied upon by the appellant.

In the case of *Wolfgang v. Henry Thiele Catering Company,* 128 Or. 433 (275 P. 33), this court, in referring to the signing of an instrument without reading the same, said:

"The fact that a person accepts or signs an instrument without reading the same is not of itself necessarily a barrier to his suit: [Citing numerous Oregon cases] * * *

"In Welch v. Johnson, *supra,* [93 Or. 591 (183 P. 776, 184 P. 280)] this court said: 'Even if the deed in question was prepared in the office of the plaintiff's attorney, and this is questionable under the testimony, that would not necessarily make it less a mistake to include the clause in dispute. Even at-

torneys are not infallible  *  *  *'. The solution of our problem, therefore, should not stop when we have discovered the ability and experience of the plaintiff; but we should go on and determine whether a mistake was made by the parties. Nothing contained in L. B. Menefee Lbr. Co. v. Gamble, *supra,* relied upon by the defendants, foreshadows a result in their favor. The decision in that case states the general rules of care exacted of a party who seeks the reformation of an instrument; but, the turning point of the decision was the finding that the plaintiff's proof did not establish a mutual mistake''.

In the case of *Vogel v. Kirshner,* 139 Or. 475 (10 P. (2d) 1053), this court quoted with approval the following excerpt from Pomeroy's Equity Jurisprudence (4th Ed.), § 853:

''In the second case, the mistake may arise after the parties have verbally concluded their agreement, and may occur in reducing that agreement to writing, by erroneously adding, omitting or altering some term; or it may arise in the very process of making the agreement, during the negotiation itself, one or both the parties misconceiving, misunderstanding or even being entirely ignorant of some term or provision; so that, although they appear to have made an agreement, yet in fact their minds never met upon the same matters''.

The failure of the defendant to read carefully the contract which plaintiff was commissioned to have prepared does not bar the defendant from having the same reformed to include the actual agreement between the parties. Defendant's negligence was not so gross that a court of equity ought to withhold relief: *Wolfgang v. Henry Thiele Catering Co.,* supra; *Howard v. Tettelbaum,* 61 Or. 144 (120 P. 373); *Holden v. Law Union & Rock Ins. Co.,* 63 Or. 253 (127 P. 547).

In *Archer v. California Lumber Co.*, 24 Or. 341 (33. P. 526), this court, passing upon a situation similar to the one at bar, in which the contract prepared by the party entrusted to draft the same did not contain the agreement of the parties, said:

"The evidence shows that the plaintiffs entrusted D. H. Bibb, with whom the agreement was made on behalf of the defendant, to take away the written memorandum made at plaintiffs' house for the purpose of preparing an agreement in accordance with the terms actually made. It further shows that the plaintiffs reposed confidence in Bibb and Gray, and that the plaintiff S. Archer supposed that Gray, who was attorney for the defendant, was acting as plaintiffs' attorney and would protect their interests. There is other evidence on this subject, but we do not deem it necessary to recur to it. To justify its decree, the court necessarily found from the evidence that the terms inserted in the agreement were not in accordance with the actual agreement which had been made between the parties, and that the plaintiffs, induced by the confidence reposed, signed the agreement so prepared without explanation or understanding the legal import of the instrument. We think the evidence justifies the conclusion reached, and the decree entered therein was proper. When one party to a contract entrusts to and depends upon the other party to have the contract as made by them reduced to writing, the party entrusted with such duty must act with the utmost good faith; and if the contract as written is not the one which was verbally agreed upon, and the party was induced by the confidence reposed in the other to execute the contract as written, believing it expressed the real contract made, equity will not permit it to stand".

■ The damages suffered by the defendant, due to the failure of plaintiff and his assignor, the Gold Seal Creamery, to carry out the terms and conditions of the

agreement between the parties, exceeded the balance due on the purchase price of the refrigerating equipment. No error was committed by the lower court in entering a decree reforming the contract sued on by plaintiff so as to make it conform to the actual agreement between the parties and enjoining the plaintiff from further prosecution of the action at law. The decree appealed from is affirmed.

RAND, C. J., BEAN and CAMPBELL, JJ., concur.